ALDERMAN, Chief Judge.
The defendant entered pleas of nolo con-tendere to breaking and entering with intent to commit a misdemeanor and resisting arrest with violence, reserving the right to appeal. He contends that the trial court erred in denying his motion to suppress certain tangible evidence seized at his apartment after his arrest. We find no error in the trial court’s ruling and affirm.
The testimony at the suppression hearing establishes that in the early morning hours Deputy Sheriff Hummel was dispatched to a convenience store, where he observed that the glass doors had been broken and that the store appeared to have been “ransacked.” Hummel and Deputy Fisher, who had also been summoned to the scene, observed footprints on the wet ground leading from the front of the store. The officers followed the footprints, which led to the door sill of the defendant’s apartment. They noticed a drop of fresh blood near the front door. Deputy Fisher knocked and the defendant opened the door. After being informed that the officers were investigating a burglary, the defendant slammed the door; then a woman opened the door, and while she was talking to the officers the defendant came back to the door, shouted obscenities, and again tried to slam the door. Standing at the door Deputy Fisher was able to observe a bloodstained towel in the living room. He put his foot in the door and told the defendant that he was under arrest for breaking and entering. The defendant resisted and a scuffle ensued in the living room and kitchen area of the apartment. The defendant was ultimately subdued, along with the woman who had tried to assist him.
After the defendant and the woman were placed in the police car, Deputy Fisher remained at the door of the apartment until an “evidence technician” arrived and photographed, among other things, the bloodstained towel and washrag found in the living room; the kitchen sink, which contained some loose coins; and the kitchen table with an unopened pack of cigarettes and a six pack of beer on it. The purpose of going back into the kitchen was to photograph the scene of the arrest to show the condition of the kitchen after the altercation. The coins, the cigarettes and the beer, which were all in plain view, were seized as evidence relating to the burglary. Additionally, Deputy Fisher went into the bathroom to close the windows and to make sure that the residence was secure before the officers left. The door of the bathroom was open. When Deputy Fisher looked into the bathroom he observed in open view bloodstained clothes which appeared to have glass fragments on them. These items were also seized.
*1116 It has been long recognized that to observe that which is open to view is not generally considered a search and that objects which fall within plain view of a police officer are subject to seizure and may be introduced into evidence. State v. Clarke, 242 So.2d 791 (Fla.4th DCA 1971). It is not a “search” for a police officer to see what may be observed from where he has a legal right to be. State v. Ashby, 245 So.2d 225 (Fla.1971). The items seized in the present case were all in plain view. The question is whether the police officer had the right to be in the position to have that view.
The bloodstained towel and washrag found in the living room were first observed by Deputy Fisher as he was standing at the front door. There is no question that, under the circumstances of this case, he had the right to knock on the defendant’s door. When the door was opened he was lawfully in a position to see the bloody towel and washrag which were in plain view in the living room.
The kitchen was part of a crime scene, the resisting of arrest by the defendant. Although Deputy Fisher did not specifically observe the items in the kitchen while the defendant was resisting arrest, they were later observed when he returned to the kitchen with the photographer. To photograph the crime scene was a legitimate reason for returning to the kitchen; therefore the officer was lawfully in a position to see the coins, cigarettes and beer.
Deputy Fisher further testified that since there would be no one left in the apartment when the officers left, he went around to close the windows and make sure there wouldn’t be access for someone to get in and burglarize the apartment. When he checked the bathroom he observed the bloody clothes in plain view. The securing of the apartment, including the bathroom, was a proper police function; therefore he was lawfully in a position to see the bloody clothes.
The defendant contends that Deputy Fisher’s conduct was merely a ruse to carry out a general exploratory search of his apartment. The trial court declined to accept this interpretation of the evidence. In testing the accuracy of the trial court’s conclusion we should interpret the evidence and all reasonable inferences and deductions capable of being drawn therefrom in the light most favorable to sustain the trial court’s conclusion. Jester v. State, 339 So.2d 242 (Fla.3d DCA 1976). Applying this test, we hold that the evidence in the present case is sufficient to establish a factual basis for the trial court determining that there was no search and that Deputy Fisher was legally in a position to view the items which he seized. The credibility of Deputy Fisher and the weight to be given his testimony is within the province of the trial judge,
AFFIRMED.
DAUKSCH, J., concurs.
CROSS, J., dissents without opinion.