388 So.2d 281 (1980)
Steven HURT, Hewey Lee Alday, Alexander Guriak, James McCardle, Thomas Edward Alexander and Michael Robert Sholl, Appellants,
v.
STATE of Florida, Appellee.
Nos. NN-58 to NN-62 and NN-178.
District Court of Appeal of Florida, First District.
September 10, 1980.
Rehearing Denied October 13, 1980.
*282 Manuel W. James, North Miami Beach, Alvin E. Entin, North Miami Beach, and Clyde M. Taylor, Tallahassee, for appellants.
Jim Smith, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Appellants were convicted for possessing more than 100 pounds of cannabis with intent to sell after they pled nolo contendere, reserving their right to appeal the denial of their suppression motion, which, if reversed, would be dispositive of their cases. Finding that the officers had no right to make a warrantless entry into the building where the cannabis was seized, we reverse.
The facts in this case stem from those recited in Behr v. State, 376 So.2d 398 (Fla. 1st DCA 1979), where we upheld the warrantless search of co-defendant Behr's truck because the searching officers possessed probable cause to search before their entry. Since Behr was convicted only of the misdemeanor offense for possession of marijuana, we did not decide in that case whether the search of the warehouse was legal. Nevertheless, given our holding in Behr, we must necessarily assume that if the search of the warehouse were conducted with a warrant, probable cause would exist for the warrant's issuance. Our inquiry then is directed to whether the entry of the building and the subsequent seizure of cannabis found within it can be sustained in the absence of a search warrant.
Shortly after Behr was seen leaving the warehouse in his truck, he was stopped, arrested, and certain officers were instructed to return to the warehouse and "secure" it while other officers obtained a search warrant. The officers at the scene knocked on a rear door, announced "police" as an occupant began to open it, and, seeing what appeared to be bales of marijuana inside, pushed their way in, arrested the appellants and seized several tons of marijuana. In denying the motion to suppress, the court held that because the officers were lawfully on the premises for the purpose of securing the warehouse and detaining the occupants, if any, until a search warrant was obtained, they were privileged to seize that which they saw in plain view after a door was opened and before they crossed the threshold.
Factually this case is quite similar to Raffield v. State, 351 So.2d 945 (Fla. 1977), where the state argued that a warrantless search of Raffield's barn, made shortly after the seizure of several vehicles in which marijuana was found, was required due to the searching officers' belief that a warrant could not be promptly obtained in a rural county and that the resulting delay might have contributed to the destruction of the marijuana found inside the barn. The court rejected these contentions, stating that while exigent circumstances may justify a warrantless search, none were there present since no attempt was made to secure a warrant and "[t]he timing of the drivers' arrest" did not establish an emergency situation permitting the entry. 351 So.2d at 947.
Here, the state contends its warrantless intrusion was vindicated by the plain view doctrine, which is an exception to the warrant requirement, permitting the admissibility of evidence "seized by an officer who has an independent justification for *283 being present unconnected with the search against the accused and who inadvertently comes across an object which is obviously evident." United States v. Diecidue, 603 F.2d 535, 559 (5th Cir.1979). The doctrine presupposes the officer's legal right to be where he was at the time the evidence was first seen. State v. Ashby, 245 So.2d 225 (Fla. 1971); Sheff v. State, 301 So.2d 13 (Fla. 1st DCA 1974). Here, the discovery of the marijuana was not inadvertent, nor were the officers legally at the opened door of the warehouse. True, their stated purpose for knocking was to secure the building and detain any persons who might be inside it. Yet they were there ultimately for the purpose of searching the premises which they had reason to believe contained marijuana. If the officers truly wished to detain any possible persons within, they were at most justified in surveilling doors and other possible exits from the building while they waited outside for a search warrant they believed would be forthcoming. Describing the inadvertence requirement, the Court, in Coolidge v. New Hampshire, 403 U.S. 443, 470-71, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971), stated: "[W]here the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, ... ... [t]he requirement of a warrant poses no inconvenience ... which is constitutionally cognizable in the legal system that regards warrantless searches as `per se unreasonable' in the absence of `exigent circumstances.'"
It is one thing for officers to be legally on the premises pursuant to an investigation, reasonably believing that persons are within who might provide information helpful to the case, and while there inadvertently see evidence of a crime, which they are then authorized to seize. Compare Menendez v. State, 368 So.2d 1278 (Fla. 1979); State v. Ashby, supra; Lovely v. State, 351 So.2d 1114 (Fla. 4th DCA 1977). It is an altogether different matter for them to use plain view as a pretext for a warrantless search of a building when they know a search warrant should first be obtained before entry is allowed.
The state, however, alternatively defends the entry on the ground it was justified by the provisions of Section 901.19(1), Florida Statutes (1977), the "knock and announce" statute. Section 901.19(1) permits a warrantless entry into a building "where the person to be arrested is or is reasonably believed to be" if the officer first knocks and announces his authority for the purpose of making "an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, ..." While Section 901.19(1) does not require that an arresting officer be aware of the actual identity of the person he seeks to arrest, it necessarily presumes the existence of someone, as well as the officer's reasonable belief the person sought to be arrested is present at a certain location. As stated, the officers had no reasonable grounds to believe there was anyone inside the building. In fact, the order denying the motion to suppress reflected the officers' uncertainty of the warehouse's occupancy, when it stated they were on the premises "for the purpose of securing the warehouse and detaining occupants, if any, ... ." (e.s.) The officers who gained entry were unaware at that time whether anyone occupied the building. Obviously the statute cannot be interpreted as condoning a warrantless entry into a building when the arresting officers are without facts leading them to believe anyone is within for them to arrest, and when their avowed purpose for being on the premises is not to arrest, but to secure the building while awaiting the delivery of a search warrant.
Assuming Section 901.19(1) may be interpreted as permitting the officers' entry, even in the absence of facts reasonably causing them to believe the presence of occupants, the seizure must still be invalidated because they failed to comply with the provisions of the statute. Although, as found by the trial judge, the officers knocked and, as the door was opened, announced their identity, they nevertheless did not announce their purpose. The cases interpreting Section 901.19(1) clearly hold *284 that law enforcement officers, prior to opening or entering through a doorway, must first knock, announce their name and authority, and their purpose. See, e.g., Benefield v. State, 160 So.2d 706 (Fla. 1964); Earman v. State, 265 So.2d 695 (Fla. 1972); Moreno v. State, 277 So.2d 81 (Fla. 3d DCA 1973); Kistner v. State, 379 So.2d 128 (Fla. 1st DCA 1979). As observed in Benefield v. State, supra, arresting officers must comply strictly with the requirements of Section 901.19(1). Here they did not. The contraband seized must be suppressed as evidence.
Because of our decision, we do not decide whether the United States Supreme Court's opinions in Payton v. New York and Riddick v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), holding that "the Fourth Amendment to the United States Constitution ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest," will be extended to buildings other than homes. 445 U.S. at 576, 100 S.Ct. at 1375. See also State v. Santamaria, 385 So.2d 1130 (Fla. 1st DCA 1980). We note, however, that despite the limited facts in Payton and Reddick, supra, the Court there stated that seizures of persons and of things are protected to the same extent, and it repeatedly contrasted seizures in public places with seizures "on private premises to which access is not otherwise available for the seizing officer." 445 U.S. at 587, 100 S.Ct. at 1380, quoting G.M. Leasing Corp. v. United States, 429 U.S. 338, 354, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977).
It was specifically stated in the record that the ruling on the motion to suppress would be dispositive of the cases. Accordingly, the convictions of all these appellants are reversed with directions that they be discharged from any further custody as to the offense involved in these consolidated appeals. See Brown v. State, 376 So.2d 382 (Fla. 1979).
MILLS, C.J., and SHIVERS, J., concur.