472 So.2d 1243 (1985)
STATE of Florida, Appellant,
v.
Vickie L. BERNIE and Bruce J. Bernie, Appellees.
No. 84-350.
District Court of Appeal of Florida, Second District.
June 21, 1985.
Rehearing Denied July 29, 1985.
*1244 Jim Smith, Atty. Gen., Tallahassee, and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellant.
R. John Cole, II of Steves, Busch & Cole, Sarasota, for appellees.
DANAHY, Judge.
The trial judge granted the Bernies' motion to suppress as evidence cocaine seized from their residence pursuant to a search warrant issued prior to a controlled delivery of the cocaine. The state appeals. We reverse.
This is what happened. Dr. Bruce Bernie and his wife Vickie reside at Apartment 608-C in the Gulf To Bay Club on Siesta Key in Sarasota. Emery Air Freight of Tampa received an envelope addressed to Vickie Bernie at the couple's residence. The envelope, which had been shipped from Dayton, Ohio, and was marked "urgent ... deliver immediately," accidentally broke open in transit, revealing a suspicious substance. Emery officials contacted a drug enforcement agent who field-tested the substance. The test was positive for cocaine. The agent resealed the envelope and notified Detective Steven Matosky, a Sarasota County Deputy Sheriff. Detective Matosky then confirmed information supplied to him that Dr. and Mrs. Bernie were from Dayton, Ohio, were co-owners of the apartment together with two other physicians, were presently residing in the apartment, and had advised the assistant manager of the Club that they were expecting an express package. Emery officials said that Dr. Bernie came to their Tampa office to check on the package. At that time he was advised that the package would be delivered on the following day, October 14, 1983.
On the morning of October 14, 1983, Detective Matosky requested a circuit judge to issue a search warrant for the Bernies' residence relative to the prospective controlled delivery of the package of cocaine. The circuit judge issued the search warrant based on Detective Matosky's *1245 supporting affidavit. The affidavit recited in part:
13. That based upon your Affiant's experience as a law enforcement officer, and narcotics detective, and further upon the events described above, your Affiant believes that BRUCE and VICKIE BERNIE are in fact expecting this package to be delivered at their residence (apartment) at #608 C, 5770 Midnight Pass Road, Sarasota, Florida. Your Affiant was advised that the package would be delivered to the residence on the afternoon of October 14, 1983. Your Affiant therefore believes that the suspect cocaine will be inside the residence of # 608 C, Midnight Pass Road, Sarasota, Florida with the full knowledge of BRUCE and VICKIE BERNIE. [Emphasis supplied.]
After obtaining the warrant, police officers met with an Emery agent and arranged for the controlled delivery. The Emery agent then delivered the package to Mrs. Bernie at the couple's residence.
After a few minutes had passed, the officers knocked and announced their presence and purpose, displayed their badges, and waited for Mrs. Bernie to open the door. When she opened the door and let them in, Detective Matosky headed toward the bedroom and bathroom area where Dr. Bernie was exiting. At this point the Bernies were advised to sit down in the living room while the search warrant was read in its entirety. The following items were found in the apartment and seized: Hollow pen body with cocaine residue, knife and small mirror, cocaine residue from rim of toilet seat, Emery envelope and wrapping.
The Bernies were then arrested and later charged with possession of cocaine in violation of section 893.13, Florida Statutes (1983). The Bernies filed a motion to suppress the evidence on the grounds that it was seized as a result of an unreasonable search and seizure. At the hearing on the motion, the Bernies relied on Gerardi v. State, 307 So.2d 853 (Fla. 4th DCA 1975), and section 933.18, Florida Statutes (1983), to support their proposition that the warrant was invalid for lack of probable cause; i.e., when the warrant was issued there was no reason to believe that narcotics laws were presently being violated inside the residence. The trial judge felt compelled to follow the Gerardi decision and reluctantly granted the motion to suppress. For the reasons we express, we think he should not have done so.
The issuance of a search warrant for a private home is governed by section 933.18, Florida Statutes (1983). This section provides in pertinent part:
No search warrant shall issue under this chapter or under any other law of this state to search any private dwelling occupied as such unless:
... .
(5) The law relating to narcotics or drug abuse is being violated therein;
... .
... . No warrant shall be issued for the search of any private dwelling under any of the conditions hereinabove mentioned except on sworn proof by affidavit of some creditable witness that he has reason to believe that one of said conditions exists, which affidavit shall set forth the facts on which such reason for belief is based. [Emphasis supplied.]
In strictly construing section 933.18, as we must,[1] we find that the requirements of this section are clear  (a) a present or known violation of a narcotics law must exist in the home to be searched prior to the issuance of the warrant for the search of that home, and (b) this fact must be alleged in the supporting affidavit. Without this allegation of a present violation of *1246 the law, a warrant would not be issued in accord with the statute and would be invalid.
In the case before us, the supporting affidavit, which uses language in futuro, only indicates an expectation that a violation of the narcotics laws "would be" occurring within the Bernies' home immediately after the controlled delivery. The affidavit, therefore, does not comply with the requirement of section 933.18(5) in that it fails to allege that any violation of the narcotics laws "is being violated therein." Thus the affidavit here, like the affidavit in Gerardi, is legally inadequate and the warrant should not have been issued. See Hesselrode v. State, 369 So.2d 348 (Fla. 2d DCA 1979), cert. denied, 381 So.2d 766 (Fla. 1980); Leveson v. State, 138 So.2d 361 (Fla. 3d DCA 1962). Prior to January 4, 1983, our determination that the warrant was invalid would have ended our task and we would have affirmed the order of suppression. Recent events in our state, however, compel us to inquire further.
When Gerardi was decided, our Florida Constitution contained its own exclusionary rule. That rule provided the citizens of Florida with a substantive right to have articles or information obtained as the result of an illegal search or seizure excluded from evidence in the courts of this state without consideration of a "good faith" exception recognized by federal courts. Thus the Gerardi court, finding that the warrant was invalid and that no warrant exceptions recognized by Florida courts were applicable, had no choice but to exclude the evidence. However, in November 1982 the electors of Florida altered that substantive right when they amended Article I, section 12, to provide:
This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution. [New language is underlined.]
The amendment is applicable to the case before us for two reasons. First, the search of the Bernies' residence took place after January 4, 1983, the date the amendment became effective. See State v. Lavazzoli, 434 So.2d 321 (Fla. 1983); State v. Hume, 463 So.2d 499 (Fla. 1st DCA 1985); State v. Ridenour, 453 So.2d 193 (Fla. 3d DCA (1984). Second, the amendment enunciates that Florida's exclusionary rule now is one which is tied to the Fourth Amendment as construed by the United States Supreme Court. Our supreme court explained the change effected by the electors of Florida in this way:
The reason, of course, was that our state exclusionary rule was specifically articulated in our constitution and hence part of organic law. On the other hand, the federal exclusionary rule was preeminently a rule of court and only procedural. As we noted in [State v.] Dodd, [419 So.2d 333 (Fla. 1982)], the difference is that while our exclusionary rule is "constitutionally mandated," the federal rule is "a creature of judicial decisional policy." Dodd, 419 So.2d at 335. The new amendment, however, links Florida's exclusionary rule to the federal exclusionary rule, making it also nothing more than a creature of judicial decisional policy and removing the "independent protective force of state law."
Lavazzoli at 323, 324.
Our research has revealed no United States Supreme Court decision reaching the same result as Gerardi. Instead, there are recent decisions which announce a "good faith" exception to the warrant requirement and therefore require us to reach a different result. United States v. Leon, 468 U.S. ___, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Massachusetts v. Sheppard, 468 U.S. ___, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984); United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Notwithstanding Gerardi, we believe the result in this case is controlled by *1247 the amendment to Article I, section 12, of the Florida Constitution and the most recent expressions of the United States Supreme Court.
Leon involved a warrant to search a home which the district court held was invalid for lack of probable cause. As a result, that court suppressed vital evidence. The circuit court of appeals affirmed. In granting certiorari, the Supreme Court did not dispute the ruling of the lower federal courts concerning the invalidity of the warrant. Instead, the Supreme Court held that the exclusionary rule should not be applied to evidence obtained as a result of an illegal search when the officer conducting the search acts in "objectively reasonable reliance" on a warrant issued by a "detached and neutral magistrate" that is subsequently determined to be defective or invalid.
In Leon, the Court began its analysis by stating unequivocally that:
[T]he Fourth Amendment "has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons."
The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands... . The wrong condemned by the Amendment is "fully accomplished" by the unlawful search or seizure itself ... the exclusionary rule is neither intended nor able to "cure the invasion of the defendant's rights which he has already suffered." The rule thus operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved." [Citations omitted.]
104 S.Ct. at 3412.
The Supreme Court went on to acknowledge that the question whether the exclusionary rule should be imposed depends on whether the likely social benefits of excluding unlawfully seized but "inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately is found to be defective" outweighed the likely costs, "particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor." Leon, 104 S.Ct. at 3413. In utilizing this balancing approach, the court must determine whether the purposes of the exclusionary rule will be furthered; i.e., whether the likelihood of deterring police misconduct is sufficient to justify the substantial social costs concomitant with the loss of probative evidence, the high risk of an erroneous verdict, and the possible generation of disrespect for the law and the administration of justice among the judicial system's constituency. See United States v. Leon; Massachusetts v. Sheppard; United States v. Janis; Tamer v. State, 463 So.2d 1236 (Fla. 4th DCA 1985).
Turning again to the case before us, we conclude that under the cost-benefit approach of Leon, exclusion of the cocaine would be improper because "there is no police illegality and thus nothing to deter." 104 S.Ct. at 3420. Indeed, Deputy Matosky did everything that was asked of him and acted with objective good faith; he conducted an independent investigation, submitted all information to the circuit judge for a probable cause determination, and obtained a facially valid warrant authorizing a search of the Bernies' residence. We find especially applicable here the Leon court's explanation that:
It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." [Citation omitted.] Penalizing the officer for the magistrates's error, rather than *1248 his own, cannot logically contribute to the deterrence of Fourth Amendment violations.
104 S.Ct. at 3420.
We also note that Detective Matosky and the other officers fully complied with section 933.09, Florida Statutes (1983), and entered the Bernies' premises only after announcing their authority and purpose and properly executing the warrant. The officers had reasonable grounds for relying on the judge's assurances that the warrant was properly issued and authorized the search they had requested. Therefore, here under these circumstances, the benefits, if any, produced by suppressing the cocaine obtained in objectively reasonable reliance on the subsequently invalidated search warrant cannot outweigh the substantial societal cost of excluding the cocaine from evidence.
By this holding, we do not mean to suggest that exclusion of the evidence is always inappropriate whenever an officer has obtained a warrant regular on its face and has acted within its scope. Exclusion is justified where the officer's actions were not taken in good faith or were not objectively reasonable. Leon, 104 S.Ct. 3419, 3420. We have recently so held in Collins v. State, 465 So.2d 1266 (Fla. 2d DCA 1985). In that case the officer knew the meaning of an oath and knew that, although he said that he believed his statements were true, no oath was administered to him before he signed the supporting affidavit. Florida law enforcement officers are well trained, professional, and have the authority to administer oaths. See generally chapter 943 and section 925.095, Florida Statutes (1983). Police officers know that an oath requires the declarant to render himself punishable for perjury for any false statements when he unequivocally attests to the truth of a statement. They know that such an act constitutes that oath-taking which is required by our statutes as well as our Federal and Florida Constitutions. See U.S. Const. amend. IV; Art. I, § 12, Fla. Const.; § 933.06, Fla. Stat. (1983). Thus, in Collins, although the search warrant was regular on its face, the unsworn supporting affidavit was so fundamentally defective that no Florida police officer could objectively reasonably rely in good faith on the circuit judge's probable cause determination and the sufficiency of the warrant. See State v. Wildes, 468 So.2d 550 (Fla. 5th DCA 1985). Therefore, based on these circumstances, this court found that the circuit judge was not provided "with a substantial basis for determining the existence of probable cause." Leon, 104 S.Ct. at 3417 (quoting Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Accordingly, this court concluded that the good faith exception reiterated in Leon did not apply and that the fruits of the illegal search should therefore be suppressed.
Therefore, in accordance with Leon, we hold that although the warrant was improperly issued, the exclusionary rule does not apply to prevent the use of the cocaine as evidence in this case.
Reversed and remanded for further proceedings.
GRIMES, A.C.J., and SCHEB, J., concur.
NOTES
[1] Criminal statutes authorizing searches and seizures must be strictly construed. Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927); State v. Tolmie, 421 So.2d 1087 (Fla. 4th DCA 1982); Hurt v. State, 388 So.2d 281 (Fla. 1st DCA 1980), petition for review denied, 399 So.2d 1146 (Fla. 1981); Hesselrode v. State, 369 So.2d 348 (Fla. 2d DCA 1979), cert. denied, 381 So.2d 766 (Fla. 1980); Leveson v. State, 138 So.2d 361 (Fla. 3d DCA 1962).