524 So.2d 988 (1988)
Vickie L. BERNIE and Bruce J. Bernie, Petitioners,
v.
STATE of Florida, Respondent.
No. 67535.
Supreme Court of Florida.
January 7, 1988.
Rehearing Denied March 18, 1988.
*989 R. John Cole, II of Steves, Busch & Cole, Sarasota, for petitioners.
Robert A. Butterworth, Atty. Gen., and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for respondent.
PER CURIAM.
This is a petition to review State v. Bernie, 472 So.2d 1243 (Fla. 2d DCA 1985), in which the district court expressly construed article I, section 12, Florida Constitution, relating to search and seizure, as amended in 1982. The district court applied the exclusionary rule's "good faith" exception and upheld the search and seizure of cocaine from a residence. We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and approve the result of the district court decision.
On October 13, 1983, Emery Air Freight received an envelope addressed to petitioner Vickie Bernie. The envelope broke open during transit, revealing a suspicious substance. Emery notified a drug enforcement agent, who tested the substance and identified it as cocaine. Emery then notified the Sarasota County sheriff's office. Petitioner Bruce Bernie came to Emery's Tampa office to check on the whereabouts of the package, at which time Emery's employees advised him that the package would be delivered the following day, October 14.
On October 14, based on an affidavit setting forth the preceding facts, police obtained a search warrant for the Bernies' residence relative to the prospective controlled delivery of the cocaine. A few minutes after the controlled delivery, police executed the warrant, arrested the Bernies, and charged them with possession of cocaine.
The Bernies moved to suppress the evidence on the grounds that it was the product of an unreasonable search and seizure, relying on the provisions of section 933.18, Florida Statutes (1983), and Gerardi v. State, 307 So.2d 853 (Fla. 4th DCA 1975). Section 933.18, Florida Statutes (1983), concerns the issuance of a search warrant for a private home and provides:

*990 933.18 When warrant may be issued for search of private dwelling.  No search warrant shall issue under this chapter or under any other law of this state to search any private dwelling occupied as such unless:
... .
(5) The law relating to narcotics or drug abuse is being violated therein;

... .
... No warrant shall be issued for the search of any private dwelling under any of the conditions hereinabove mentioned except on sworn proof by affidavit of some creditable witness that he has reason to believe that one of said conditions exists, which affidavit shall set forth the facts on which such reason for belief is based.
(Emphasis added.) In Gerardi, the Fourth District Court of Appeal held that section 933.18 "not only does not authorize issuance of a search warrant for search of a private dwelling for violations of the law relating to narcotics or drug abuse unless such law is currently being violated therein, it expressly prohibits such issuance." Id. at 855 (emphasis added). On the basis of this authority, the trial judge granted the Bernies' motion to suppress.
On appeal, the Second District Court reversed. The district court recognized that the requirements of section 933.18 were clear: "[A] present or known violation of a narcotics law must exist in the home to be searched prior to the issuance of the warrant for the search of that home." Bernie, 472 So.2d at 1245. Since the allegation in the affidavit failed to allege that any narcotics law "was being violated therein," the affidavit was legally inadequate and the warrant should not have been issued. Id. at 1246. The district court held that Gerardi, which required suppression of the evidence, was inapplicable because of the amendment to article I, section 12, of the Florida Constitution in 1982. The district court applied our recent decision in State v. Lavazzoli, 434 So.2d 321 (Fla. 1983), interpreting the new constitutional provision as linking Florida's exclusionary rule to the federal exclusionary rule and determined that United States v. Leon,, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), were applicable. The district court concluded that the "exclusion of the cocaine would be improper because `there is no police illegality and thus nothing to deter.'" Bernie, 472 So.2d at 1247, quoting Leon, 468 U.S. at 921, 104 S.Ct. at 3419.
Article I, section 12, of the Florida Constitution, relating to search and seizure, as amended in 1982, effective January 3, 1983, states:
Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.

The underlined portions constitute the 1982 amendment.

Part I. Prospective Application of the 1982 Amendment

Prior to passage of this amendment, Florida courts "were free to provide its citizens with a higher standard of protection from governmental intrusion than that afforded by the Federal Constitution," Lavazzolli, 434 So.2d at 323. With this amendment, however, we are bound to follow the interpretations of the United States Supreme Court with relation to the fourth *991 amendment, and provide no greater protection than those interpretations. Indeed, an exclusionary rule that was once constitutionally mandated in Florida can now be eliminated by judicial decision of the United States Supreme Court.
We are furthermore bound by prospective decisions of that Court, even though the electors, in considering the 1982 amendment, could not have foreseen, nor ratified, those decisions. The argument has been advanced that this Court could not be bound by future decisions of this country's highest court. Nevertheless, decisions rendered by the United States Supreme Court after adoption of the 1982 amendment must have the same controlling weight as those rendered before. The language of article I, section 12, clearly indicates an intention to apply to all United States Supreme Court decisions regardless of when they are rendered.

Part II. Validity of the Search Warrant

The proliferation of illegal drugs has intensified the use of commercial delivery services to transport this type of contraband. Law enforcement personnel are occasionally informed by transportation employees that certain packages contain drugs. This information is utilized to search and seize the package and have it delivered to the addressed premises, where the package is seized in the possession of the addressee. This is characterized as an "anticipatory search," which is defined as one based upon an affidavit showing probable cause that at some future time, but not presently, certain contraband will be at the location set forth in the warrant. See 2 W. LaFave, Search and Seizure § 3.7(c) (2d ed. 1978). The law is clear that such warrants are not constitutionally invalid for lack of a present violation of law at the premises where the contraband will be delivered in the future.
No language in either the Florida Constitution or the United States Constitution prohibits issuance of a warrant for service at a future time. One court found no probable cause defect in an anticipation warrant "as long as the evidence creates substantial probability that the seizable property will be on the premises when searched." People v. Glen, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614 (1972). A number of federal circuit courts of appeals have expressly upheld similar anticipatory searches. In United States v. Hendricks, 743 F.2d 653 (9th Cir.1984), cert. denied, 470 U.S. 1066, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985), customs intercepted a box arriving from Brazil, addressed to the defendant at a residence. The box contained a suitcase which held approximately seven pounds of cocaine. Although the court found the search warrant invalid because it failed to establish a sufficient probable cause nexus between the box containing the cocaine and the house, Leon applied and the evidence was admissible. In United States v. Goff, 681 F.2d 1238 (9th Cir.1982), the court found the informant's information sufficiently corroborated and the search warrant not invalid merely because it anticipated that the defendants would arrive at the airport within a reasonable time. In United States ex rel. Beal v. Skaff, 418 F.2d 430 (7th Cir.1969), a search warrant for a parcel believed to contain marijuana that would be delivered at a specified time was deemed constitutionally valid. The affidavit did not allege that marijuana was on the premises to be searched, only that it would be on the premises in the future. The execution of the warrant about thirty minutes after delivery was held constitutionally valid. See also United States v. Foster, 711 F.2d 871 (9th Cir.1983), cert. denied, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984); United States v. Valenzuela, 596 F.2d 824 (9th Cir.), cert. denied, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). Without question, this type of search is constitutionally permissible with a warrant.
The United States Supreme Court, however, in its recent decision in Illinois v. Andreas, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983), determined no warrant was necessary under the limited circumstances in that case. In Andreas, the United States Supreme Court held that the warrantless reopening of a sealed container, in *992 which contraband drugs had been discovered in an earlier lawful search of the contraband in transit, did not intrude on any legitimate expectation of privacy. Further, the warrantless search did not violate the fourth amendment where there was no substantial likelihood that the container's contents had been changed during a gap in surveillance.
The factual circumstances in Andreas and the instant case are similar. The facts in the instant case establish a prior legal search resulting from the fact that the envelope carrying the prohibited drugs broke open during transit and the contents were properly examined and identified as a prohibited drug. Under the principles established in Andreas, given this proper prior legal search, the recipients no longer enjoyed any expectation of privacy in the package. Further, the resealed package of cocaine remained in the constructive possession of law enforcement officials for its subsequent controlled delivery to the Bernies. Andreas clearly allows this type of warrantless, controlled delivery and subsequent search and reopening where there is no substantial likelihood that the container contents were changed. See also United States v. DeBerry, 487 F.2d 448 (2d Cir.1973). The law is now clear that neither the Florida Constitution nor the United States Constitution requires issuance of a warrant for this type of search.
We must, however, consider the effect of section 933.18. Section 933.18 requires issuance of a warrant for the entry into a private dwelling. It provides, in part: "No search warrant shall issue under this chapter or under any other law of this state to search any private dwelling occupied as such unless" ... [t]he law relating to narcotics or drug abuse is being violated therein. (Emphasis added.) The drugs involved in the instant case were in the constructive possession of the law enforcement officers because of their prior legal search and seizure. The evidence and supporting affidavit in the instant case show that the Bernies requested delivery of the contraband to their residence and that they knew the contraband was presently in transit and would arrive on a particular day. Since the contraband had already been discovered by a legal search, the Bernies had no expectation of privacy in the contraband package. We find that a reasonable construction of the emphasized words in the statute allows a warrant to be issued when the evidence and supporting affidavit show that the drugs have already been discovered through a legal search and seizure and are presently in the process of being transported to the designated residence which is being used as the drug drop. It is our view that this is not the type of in futuro allegation for a warrant that the legislature intended to prohibit by this statute. In this circumstance, the state already knows the drug laws have been violated. Because we hold the warrant valid under our statute, the application of Leon is unnecessary. There was clearly probable cause to obtain a warrant, as required by section 933.18, to seize a package already in law enforcement's constructive possession and which law enforcement knew contained contraband drugs.

Conclusion
To summarize, we hold (1) the 1982 amendment to article I, section 12, of the Florida Constitution brings this state's search and seizure laws into conformity with all decisions of the United States Supreme Court rendered before and subsequent to the adoption of that amendment; (2) the anticipatory search warrant issued under the circumstances of this case is valid and does not violate the provisions of the United States Constitution, the Florida Constitution, or section 933.18.
For the reasons expressed, we approve the decision of the district court of appeal.
It is so ordered.
McDONALD, C.J., SHAW, J., and BEN C. WILLIS (Ret.), Associate Justice, concur as to Part I and Part II.
EHRLICH, J., concurs as to Part I and Part II with an opinion, in which McDONALD, C.J., and SHAW, J., concur.
*993 OVERTON, J., concurs in the judgment, agrees to Part II, but concurs in result only in Part I, with an opinion.
KOGAN, J., concurs as to Part I, but dissents as to Part II with an opinion.
BARKETT, J., dissents as to Part I and Part II with an opinion.
EHRLICH, Justice, concurring.
I concur with the Court's opinion, with these additional comments.
The 1982 amendment to article I, section 12 of The Florida Constitution was, in my opinion, a clear reaction by the electorate to Florida courts' commitment to provide the fullest protection afforded by our state constitution. As stated by this Court in State v. Lavazzoli:
Prior to the amendment, the right of a citizen of the State of Florida to be free from unreasonable searches and seizures was guaranteed independently of the similar protection provided by the fourth amendment of the United States Constitution. Under article I, section 12 as it existed prior to the amendment, the courts of this state were free to provide its citizens with a higher standard of protection from governmental intrusion than that afforded by the federal constitution. See, e.g., State v. Dodd [, 419 So.2d 333 (Fla. 1982)]; Odom v. State, 403 So.2d 936 (Fla. 1981); State v. Sarmiento, 397 So.2d 643 (Fla. 1981); Sing v. Wainwright, 148 So.2d 19 (Fla. 1962); Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927); Taylor v. State, 355 So.2d 180 (Fla. 3d DCA 1978). The reason, of course, was that our state exclusionary rule was specifically articulated in our constitution and hence part of organic law. On the other hand, the federal exclusionary rule was preeminently a rule of court and only procedural. As was noted in Dodd, the difference is that while our exclusionary rule is "constitutionally mandated," the federal rule is "a creature of judicial decisional policy." Dodd, 419 So.2d at 335. The new amendment, however, links Florida's exclusionary rule to the federal exclusionary rule, making it also nothing more than a creature of judicial decisional policy and removing the "independent protective force of state law."

434 So.2d 321, 323-24 (Fla. 1983) (footnote omitted) (emphasis added). Nowhere in either article I, section 12 or the statement placed on the November ballot is there any indication that the amendment was intended to encompass only those United States Supreme Court decisions existing at the time of adoption. The very tenor of the ballot statement and other preelection literature concerning the amendment[1] supports a contrary conclusion. The ballot statement provided:
Constitutional Amendment
Article I, section 12
SEARCHES AND SEIZURES.  Proposing an amendment to the State Constitution to provide that the right to be free from unreasonable searches and seizures shall be construed in conformity with the 4th Amendment to the United States constitution and to provide that illegally seized articles or information are inadmissible if decisions of the United States Supreme Court make such evidence inadmissible.
J. of the House of Rep. (8th special session) at 4. (Emphasis added.). It is apparent that by adopting this amendment the electorate intended to tie Florida courts' interpretation of article I, section 12 to the coattails of the United States Supreme Court. Under this amendment the federal Supreme Court is in effect the "ultimate *994 arbiter"[2] of what protections are provided under article I, section 12. To hold that article I, section 12 only binds this Court to precedent existing at the time of its adoption is, in my opinion, an affront to the voters of this State.
McDONALD, C.J., and SHAW, J., concur.
OVERTON, Justice, concurring in judgment.
I concur in the judgment. I approve in full the part II holding that Illinois v. Andreas, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983), should be applied to the facts of this case, although I do not find we are mandated to do so.
I disagree with the holding in part I that the amendment to article I, section 12, in 1982, absolutely binds us to prospective decisions of the United States Supreme Court and thereby makes unknown United States Supreme Court decisions part of our Florida Constitution.[1] I believe the 1982 amendment simply requires this Court to interpret the Florida constitutional provision, section 12 of article I, in accordance with the United States Supreme Court decisions existing at the time the amendment was adopted. United States Supreme Court decisions rendered after November, 1982, should be considered only persuasive authority. My reasoning is twofold. First, a constitution, in the American sense,[2] is a written document totally superior to the operations of government. As such, neither our legislature, by statutes, nor our courts, through decisions, can amend the Florida Constitution. The majority compromises this principle by allowing the federal government to amend our constitution by unknown future decisions of the United States Supreme Court. To interpret the new constitutional provision set forth in article I, section 12, to mean that its application depends entirely on the future whims of the United States Supreme Court and its decisions, whatever their result, is contrary to the meaning and purpose of a constitution. I note that if the United States Supreme Court decided to substantially expand the exclusionary rule's scope, justified on the basis of supervising the federal courts, we would be bound by that decision under the majority's opinion. Such a decision is contrary to the purpose of the 1982 amendment because the people of this state clearly intended to reduce the scope of the exclusionary rule  not expand it.
Second, I object to the prospective required tie-in to United States Supreme Court decisions because I subscribe to the principles we set forth for the legislature in Freimuth v. State, 272 So.2d 473 (Fla. 1972). In that case, we addressed the validity of a criminal statute, section 404.01(3), Florida Statutes (1971), which defined a hallucinogenic drug as "lysergic acid ... and any other drug to which the drug abuse laws of the United States apply." We determined the legislature could not define a hallucinogenic drug in accordance with a federal statute enacted after the effective date of the Florida statute. We stated that it is "`an unconstitutional delegation *995 of legislative power for the legislature to adopt in advance any federal act or the ruling of any federal administrative body that Congress or such administrative body might see fit to adopt in the future,'" 272 So.2d at 476, quoting Florida Industrial Commission v. State, 155 Fla. 772, 21 So.2d 599, 603 (1945). The principle is clear that new laws should be controlled by representatives of the people, not by a broad designation to a governmental entity outside the state and not responsible to the citizens of the state. I apply the same principle to this constitutional provision. A fair reading of this constitutional provision does not justify a conclusion that the people knew, in ratifying the 1982 amendment to the Florida Constitution, that they were voting to approve future unknown decisions of the United States Supreme Court as part of their constitution. If prospective application had been intended, both the amendment and the ballot would have clearly reflected that intent.
Although I do not believe we are bound by decisions of the United States Supreme Court rendered after November of 1982, I also do not believe we are in any way restricted in applying the principles of those cases. I would consider them as persuasive authority, but not mandated by the constitutional amendment. In this regard, I would approve the principles of Illinois v. Andreas.
KOGAN, Justice, concurring in part, dissenting in part.
I concur with part I of the Court's opinion regarding the issue of the prospective application of article I, section 12 of the Florida Constitution. However, I must dissent from the Court's failure to address the issues raised in the second district's opinion, as well as from part II of the Court's opinion applying Illinois v. Andreas, 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983) to the present set of circumstances. This application discards, without comment, both established precedent of this Court, as well as that of the district courts of appeal, and significant statutory law, which must be strictly complied with.
The second district below held that the evidence recovered in the Bernie's home was admissible despite the patent invalidity of the search warrant, State v. Bernie, 472 So.2d 1243, 1246 (Fla. 2d DCA 1985). The court reasoned that because the officers allegedly acted in good faith in procuring and executing the warrant, the facial invalidity would not prohibit admission of the evidence, citing United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In that case, by which Florida courts are bound since the effective date of the 1982 amendment to Article I, section 12 of the Florida Constitution, the United States Supreme Court decided that where police officers act in good faith upon a search warrant that is facially insufficient or defective, the exclusionary rule of the fourth amendment to the United States Constitution would not prevent admission of evidence recovered pursuant to that warrant.
The majority opinion in the present case does not sufficiently address the holding of the district court, or the issues raised thereby. To ignore the work of that court, literally without comment, fails to settle an extremely important issue of search and seizure law which has been directly presented to this Court. The majority's lack of comment on this issue requires me to address it.
In Leon, police in Burbank, California prepared an affidavit in support of a warrant to search the residence of Alberto Leon. The ensuing searches produced large quantities of narcotics, which Leon moved to suppress. That motion was based on the failure of the affidavit to state the reliability of the confidential informant from whom police had garnered their information. The trial court granted the motion to suppress on the ground that because of this deficiency, the affidavit and the warrant failed to state probable cause.
Following affirmance by the Ninth Circuit Court of Appeals, United States v. Leon, 701 F.2d 187 (9th Cir.1983), the United States Supreme Court reversed. The Court held that because the officers conducted the search in good faith reliance on *996 a warrant they believed was valid, the exclusionary rule would not operate to suppress evidence found in the search even though the warrant was facially invalid. This created a "good faith" exception to the exclusionary rule under the fourth amendment. 468 U.S. at 920-21, 104 S.Ct. at 3419.
The Court reasoned that the exclusionary rule is not intended to rectify any individual right that has been violated, but rather it was principally intended to deter police misconduct. 468 U.S. at 906, 104 S.Ct. at 3411; United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974); Stone v. Powell, 428 U.S. 465, 540, 96 S.Ct. 3037, 3073, 49 L.Ed.2d 1067 (1976) (White, J., dissenting). In Leon, the Court utilized a "cost/benefit" analysis, balancing the cost of excluding reliable, physical evidence against the benefit of the deterrent value. If the cost outweighs the benefit, the evidence should not be suppressed. Where the police officers are acting in good faith reliance on a warrant they have no reason to believe is invalid, the deterrent value is nominal, and the cost of exclusion too great. The Court went on to establish the standard by which good faith should be measured. The proper test is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." 468 U.S. at 922, n. 23, 104 S.Ct. at 3420, n. 23. The Court emphasized that this standard should be objective. It is unclear how an inherently subjective concept such as good faith can be measured objectively. The court stated; however, that "[t]he objective standard we adopt ... requires officers to have a reasonable knowledge of what the law prohibits." 468 U.S. at 919, n. 20, 104 S.Ct. at 3419, n. 20. This implies that where an officer should have been aware of the deficiency on the face of the warrant, that officer has not acted in "objective good faith," thus requiring the evidence to be excluded.
Were this not the case, the good faith exception enunciated in Leon would provide police officers with an incentive to remain ignorant. The less officers know about the law, the more they could getaway with while conducting searches, thus lowering the standard of acceptable police conduct. I would not facilitate this incentive. Rather, I believe that the importance of police officers understanding the clearly delineated laws they are enforcing cannot be understated. To charge police officers with knowledge of statutory search and seizure law gives police the incentive to educate themselves.
Leon involved a situation where a questionable probable cause determination was made. The determination was one in which the evidence was "sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause.," 468 U.S. at 926, 104 S.Ct. at 3422. The present case involves not a mistaken judgement call concerning probable cause, but rather the warrant and affidavit failed to meet the clear and express requirement of section 933.18 Fla. Stat. (1983). This is not a case where there was question as to the existance of probable cause, as in Leon. There is no question here that the warrant was invalid on its face.
The objective good faith standard this Court should adopt requires that police officers have reasonable knowledge of statutes regulating search and seizure. (Chapter 933 Fla. Stat. 1983). The failure to be aware of, and understand these statutory search and seizure regulations should be inherently unreasonable conduct for a police officer charged with implementing those regulations in conducting searches and seizing evidence. This is not to say I would require police officers to become constitutional scholars, only that they become aware of, and understand the basic principles embodied in chapter 933, including the unambiguous requirement that affidavits for search warrants must allege present violations of narcotics laws. If some police officers decline, or are unable to learn and understand the parameters of chapter 933, then they should be required to take steps to ensure that their supporting affidavits meet the requirements of that chapter (as well as those requirements delineated by this Court and the United States Supreme Court). This may be accomplished *997 by submitting affidavits to either the local state attorney's office, or the local police department's legal advisor for their advice.[1]
I would limit the Leon good faith exception to the facts of that case. Where a probable cause determination not based on statute is mistakenly made, and police officers rely in objective good faith on that determination, the exclusionary rule should not operate to suppress the evidence recovered in that search. However, we cannot forget that the good faith exception is just that  an exception. To limit the Leon holding to its facts as I have suggested, would keep the exception from swallowing the rule. It would defy both logic and reason to abrogate the well-established exclusionary rule with an exception so broad that the rule is, for all practical purposes, a nonentity.
Under the Leon cost/benefit analysis, the deterrence against police misconduct, and the incentive to police officers to educate themselves with regard to express search warrant regulations is balanced against the cost of suppressing trustworthy, physical evidence. The failure to comply with clear, express, and established statutory provisions should render the warrant and the ensuing search invalid. The value of deterring police from misconduct and ignorance of statutory regulation outweighs the cost of suppressing evidence. While police cannot be expected to follow the fluctuations and permeations of probable cause interpretations, they must be aware of, and comply with, the static provisions of chapter 933, Florida Statutes.
Despite the critical nature of this issue, the majority declines to address it. I have taken this opportunity to do so because the issue is vital to the holding of the second district below. Whatever the Court's holding today, it has an obligation to at least accept or reject the reasoning of the court, especially in light of the fact that the majority opinion expressly approves of that decision. Nonetheless, the Court fails to address the district court's holding beyond merely facially acknowledging its existence.
I do not, nor could not dispute the Court's holding that the 1982 amendment to article I, section 12 must apply to prospective decisions of the United States Supreme Court as well as those already rendered. It matters not that the people of Florida do not have the opportunity to ratify those in futuro decisions of that Court. By constitutional amendment we have expressly granted the United States Supreme Court the right to interpret our search and seizure law. It is beyond question that the only possible reading of the 1982 amendment is that we are bound by future decisions of the United States Supreme Court.
We are not bound; however, by those decisions which are not on point, or even analogous to the situations which we face in Florida that are unique to Florida law. The majority relies on the United States Supreme Court's decision in Illinois v. Andreas, to hold that there are no constitutional restrictions on the admission of evidence recovered from a citizen's private residence that has been previously legally opened by authorities, and resealed and delivered to that residence.
I am unconvinced by the Court's pronouncement that the facts in that case are similar to those in the present case. I believe that the facts in Andreas are sufficiently dissimilar from those in this case to remove the controlling effect of Andreas. In Andreas, the initial discovery was the result of a proper border search. Here, there was no border search, but rather the package merely broke open in transit. Moreover, the situation in Andreas involves *998 a good faith attempt to obtain a warrant. Because the contraband was about to be removed from the premises, police in that case were forced to move quickly, without a warrant. In this case; however, the police obtained a warrant that was patently defective. On its face the warrant was invalid.
Even assuming that the Bernies did not have a reasonable expectation of privacy in the package, which the Court in Andreas purports to hold, there is no doubt that they did maintain a reasonable expectation of privacy in their home. In Andreas, the police arrested the defendant, while he was physically in possession of the package, outside his residence. The police never entered Andreas' home. That case involved only the unwarranted search of a package which had already been properly opened by authorities. In the present case, the police entered the Bernie's home with an invalid warrant. It cannot even colorably be argued that Andreas allows the unwarranted entrance into a private residence. The Court today goes far beyond the holding of Andreas and further beyond what the constitution and the laws of this state will allow.
More fundamentally, the majority ignores statutes regulating the issuance of search warrants and execution. It has been well settled law for over six decades that laws regulating searches and seizures must be strictly complied with.[2] "It is almost axiomatic that statutes and rules authorizing searches and seizures are strictly construed and affidavits and warrants issued pursuant to such authority must meticulously conform to statutory and constitutional provisions." State v. Tolmie, 421 So.2d 1087 (Fla. 4th DCA 1982) (citations omitted). The reason for this strict adherence is obvious. Aside from the constitutional ramifications of failure to guard against unreasonable searches, the legislated rules which regulate the issuance of warrants, and the conduct of searches, are intended not only to guarantee those constitutional rights, but to prevent the real and significant spectre of police misconduct. To allow any variance from these express legislative mandates would not only flaunt legislative authority to regulate such conduct, but actually encourage misconduct.
The Court today has allowed the admission of evidence which, according to any reasonable construction of the regulating statute[3] was obtained in violation of that statute. Certainly the second district below recognized this, as did the fourth district in Gerardi v. State, 307 So.2d 853 (Fla. 4th DCA 1975). See State v. Bernie, 472 So.2d 1243, 1245 (Fla. 2d DCA 1985). The majority, in its haste to discard the plain meaning of the statute, does not expressly overrule Gerardi, but attempts to find some other "reasonable construction" of the statute by explaining that because the contraband was discovered by law enforcement officers before it arrived at the Bernies' residence, the cocaine was in the constructive possession of the police. While this may be a "reasonable construction" *999 of the statute, it is by no means a permissible one.
As clarified previously, our statutes regulating search and seizure must be strictly construed.[4] We are bound by this significant precedent the same way we are bound by United States Supreme Court decisions that are on point. To ignore this precedent without expressly overruling it, as the Court has done today, ignores the time-honored principle of stare decisis. Whatever the end result of the Court's opinion, I cannot believe that it is worth that.
Even assuming arguendo that Andreas does control, and that there are no constitutional barriers to the admission of this evidence, it is obvious that the additional statutory requirements bar the admission of this evidence. The Court in Andreas did not address any issues of statutory or other legislative regulation of search and seizure because the state of Illinois does not necessarily have a statute such as the one involved in this case. This Court, in its haste to achieve what it believes is the proper result, treads upon the legislature's authority to regulate the issuance of search warrants and searches and seizures in this state. The statutory regulations of search warrant issuance are in addition to those requirements specified in the state and federal constitutions. They are not mere reinterpretations of the constitution, but substantive and procedural requirements intended to supplement those constitutional requirements. The judicial reinterpretation of one constitutional requirement does not, as the Court implies today, rescind the legislature's enactments intended to further protect the citizens of this state from unreasonable searches and seizures. Again, even though the constitutional barriers to the admission of this evidence may have been torn down (and I do not believe that they have), the statutory ones still stand, until the legislature removes them, or a court of sufficient jurisdiction and power expressly declares them unconstitutional. Until then, they must be given their full force and effect by this Court, and they must also be strictly and meticulously construed, so as to give our citizens the fullest protection intended by our legislature.
For these reasons I must vigorously dissent from that portion of the Court's opinion which holds that the anticipatory search warrant issued, and the ensuing search in this case were valid. Although I concur with the Court's prospective application of United States Supreme Court cases to our search and seizure constitutional law, I would quash the opinion of the district court, because of the reasons stated above.
BARKETT, Justice, dissenting.
I must respectfully dissent. In my view, the evidence was illegally obtained under section 933.18, Florida Statutes, (1985), and therefore should have been excluded. I find the majority's analysis, especially its discussion of Illinois v. Andreas, totally inapplicable to the case before us and therefore totally unpersuasive.
The bottom line of the majority's decision is its construction of section 933.18 to permit the issuance of a warrant "when the evidence and supporting affidavit show that the drugs have already been discovered through a legal search and seizure and are presently in the process of being transported to the designated residence which is being used as the drug drop." Majority opinion at 992.
The majority, however, fails to provide any guidance as to how it arrived at its destination. Rather than applying conventional rules of statutory construction to a Florida statute that has been part of our law for over sixty years, the majority appears to somehow premise its conclusion on a case which cannot possibly have any relevance to the issue before us, Illinois v. Andreas.
Andreas dealt with a warrantless search. This case involves the validity of a warrant. Andreas did not involve rules of statutory construction because no state or federal statute was implicated. The validity of the warrant in this case depends on the construction of a state statute. Andreas did not involve the search of a private home. *1000 This case does. Without analysis, the majority somehow translates the Andreas lack of expectation of privacy in a package delivered outside the home to a lack of expectation of privacy inside a home, and then apparently uses that "analysis" as the basis of construing our Florida statute.
On this issue, I agree totally with Justice Kogan's opinion on the invalidity of the warrant and on his analysis of United States v. Leon.
I also believe that article I, section 12 of the Florida Constitution should be construed as an approval only of those decisions of the United States Supreme Court in existence prior to the vote on the amendment and not inconsistent with other provisions of our constitution. If the intent of the amendment was to provide Floridians with only the search and seizure protections of the federal constitution, this goal could have been accomplished more easily by simply repealing article I, section 12. This, however, was not done. On the contrary, the amendment left intact the original provisions of article I, section 12, pertaining to search and seizure, including those provisions that differ from, and are more restrictive than, the fourth amendment.[*] Moreover, in addition to the internal conflicts within article I, section 12, the amendment raises questions of conflict with other specific provisions of our constitution, e.g., article I, section 23 (right to privacy) and article XI (providing means for amending state constitution) of the Florida Constitution. These questions and conflicts require that this unique addition to the Florida Constitution be narrowly construed.
NOTES
[1] Prior to the election, voters were informed that the purpose of this amendment was "to instruct the Florida State Supreme Court that it should follow the United States Supreme Court exclusion of evidence, thus relaxing any stricter interpretation than that required by the 4th Amendment of the United States Constitution as it is interpreted by the United States Supreme Court." M. Dauer & D. McEachern, Florida State Constitutional Amendments To Be On Ballot At November, 1982 General Election 8 (Public Administration Clearing Service, Univ. of Fla. Series No. 65, 1982).
[2] "[I]t seems clear that [the proposed amendment to article I, section 12] is an attempt to conform state to federal standards, the latter being the ultimate arbiter." Id. at 9.
[1] For a thorough discussion of this issue, see Slobogin, State Adoption of Federal Law: Exploring the Limits of Florida's "Forced Linkage" Amendment, 39 U.Fla.L.Rev. 653 (1987).
[2] The meaning of the term "constitution," in the American sense, is contained in an essay by Gordon S. Wood, which states, in part:

By the end of the Revolutionary era ... the Americans' idea of a constitution had become very different from that of the English. A constitution was now seen to be no part of the government at all. A constitution was a written document distinct from and superior to all the operations of government. It was, as Thomas Paine said in 1791, "a thing antecedent to a government; and a government is only the creature of a constitution." And, said Paine, it was "not a thing in name only; but in fact." For Americans a constitution was like a bible, possessed by every family and every member of government. "It is the body of elements, to which you can refer, and quote article by article; and which contains ... everything that relates to the complete organization of a civil government, and the principles on which it shall act, and by which it shall be bound."
Wood, Eighteenth-Century American Constitutionalism, in This Constitution, Our Enduring Legacy 14 (1986).
[1] I recognize that this would place a heavy burdon on police in cases where time is of the essence. However, the burdon of having the evidence seized, and then later suppressed because the police failed to meet the requirements of chapter 933, is far heavier. Even now, some judicial circuits maintain a policy wherein most affidavits requesting search warrents are submitted to the state attorney's office to ensure that they are statutorily and constitutionally valid. Had that happened in the present case, there is little doubt that the assistant state attorney would have caught the deficiency and corrected it before the Bernie's house was searched.
[2] Every appellate court that has addressed the issue of the degree of complience with search and seizure statutes required has consistently held that such complience must be absolute. See, e.g., Gildrie v. State, 94 Fla. 134, 113 So. 704 (1927); Jackson v. State, 87 Fla. 262, 99 So. 548 (1924); State v. Bernie, 472 So.2d 1243 (Fla. 2d DCA 1985); State v. Tolmie, 421 So.2d 1087 (Fla. 4th DCA 1982); Hurt v. State, 388 So.2d 281 (Fla. 1st DCA 1980), pet. for rev. denied, 399 So.2d 1146 (Fla. 1982); Hesselrode v. State, 369 So.2d 348 (Fla. 2d DCA 1980), cert. denied, 381 So.2d 766 (Fla. 1980); Leveson v. State, 138 So.2d 361 (Fla. 3d DCA 1962).
[3] That statute reads:

933.18 When warrant may be issued for search of private dwelling  No search warrant shall issue under this chapter or under any other law of this state to search any private dwelling occupied as such unless:
... .
(5) The law relating to narcotics or drug abuse is being violated therein;
... .
... No warrant shall be issued for the search of any private dwelling under any of the conditions hereinabove mentioned except on sworn proof by affidavit of some creditable witness that he has reason to believe that one of said conditions exists, which affidavit shall set forth the facts on which such reason for belief is based.
§ 933.18, Fla. Stat. (1983) (emphasis added).
[4] See supra note 2.
[*] E.g., article 1, section 12 includes as an express provision the right to be secure "against the unreasonable interception of private communications by any means."