565 So.2d 1387 (1990)
John E. POLK, Etc., Appellant,
v.
Dorothea WILLIAMS, Appellee.
No. 89-2232.
District Court of Appeal of Florida, Fifth District.
August 30, 1990.
*1388 Gayle S. Swedmark and Jennifer Parker LaVia of Parker, Skelding, Labasky & Corry, Tallahassee, for appellant.
William H. Morrison of William H. Morrison, P.A., Altamonte Springs, for appellee.
PETERSON, Judge.
This is a civil action arising from the execution of a search warrant alleged by Dorothea Williams to have been issued without probable cause. John E. Polk, Sheriff of Seminole County, appeals a summary judgment of liability entered against him upon Williams' complaint for false imprisonment during execution of the warrant and negligent invasion of her right of privacy. We reverse.
Williams argued that no probable cause existed for the issuance of the search warrant since it was not supported by a sufficient *1389 affidavit. Her complaint alleged that Deputy Scott, who prepared the affidavit, did not personally observe some of the events described in it, that he based his recitations on impermissible hearsay statements, and that materially he misstated facts. Deputy Scott's affidavit related that he searched and audio-"bugged" an informant and that he supplied the informant with cash for a "buy" of cocaine. The affidavit states that Officer Tolleson, a member of another law enforcement agency, drove the informant to a point in close proximity to Williams' residence at 702 Brentwood Street and watched the informant walk to the residence. The affidavit states that Scott monitored the body bug and that he heard the informant speak with someone called Lionell, after which Lionell walked into the residence, then exited it shortly thereafter, and spoke with the informant. Scott states in his affidavit that he heard a narcotics transaction between the informant and Lionell, that after the transaction the informant returned to Tolleson's car, gave Tolleson two pieces of crack cocaine, said that he had purchased them from Lionell, and that he had observed additional cocaine in Lionell's possession. Scott concluded that "[b]ased on the above facts it is the belief of your affiant that controlled substances to wit: cocaine, are being stored at and sold from [Williams' residence]... ." It is important to note the affidavit indicated that Lionell exited the residence shortly after entering it.
Officer Tolleson's incident report indicated that, after he saw Lionell enter the residence, he drove around the block with the informant as a passenger, and that, when he returned to the front of the residence, Lionell was outside. The informant then exited the car and purchased the cocaine from Lionell. Scott testified that, although Tolleson had signed the incident report in the form of an affidavit, he did not base his request for a search warrant upon it. He, instead, incorporated Tolleson's oral reports into the affidavit.
Williams asserts that, after redaction of false and misleading statements in Scott's affidavit, no probable cause was shown by the affidavit. The alleged false or misleading portions of the affidavit include:
1. The affidavit contained information obtained from the informant and Tolleson without revealing the source of the information.
2. The affidavit implied firsthand knowledge on the part of Scott, and he had no such knowledge.
3. The affidavit implies continuous monitoring of the confidential informant and the suspect.
4. The affidavit does not describe a "controlled buy" since Scott did not personally observe the transaction, nor did he personally observe Lionell enter and exit the residence.
5. The reliability of the confidential informant must have been shown in the affidavit for the issuing judge to consider the veracity of the informant. (Scott's deposition indicates that he had worked with the informant at least 20 times before, believed that informant's statements were true, and was not sure why he did not mention this in the affidavit.)
While the absence of statements in an affidavit of probable cause as to the reliability of a confidential informant would normally render the affidavit deficient, there exists an exception when the informant makes a "controlled buy." An informant's reliability is established by a successful controlled buy. State v. Gieseke, 328 So.2d 16 (Fla. 1976); Ryals v. State, 498 So.2d 1365 (Fla. 5th DCA 1986); State v. Cohen, 442 So.2d 346 (Fla. 5th DCA 1983). A controlled buy is one in which the confidential informant is personally supervised and constantly monitored by the affiant.
While Deputy Scott constantly monitored the informant through the body bug, he did lose sight of him during a period of time. However, Officer Tolleson did personally observe the informant when he was out of Scott's sight. Thus, the confidential informant was continually observed, overheard, and supervised through the entire incident. Could Scott validly rely upon communications from Tolleson in order to furnish the information during the gap of *1390 Scott's observation of the informant? An arresting officer is not required to have sufficient firsthand knowledge to constitute probable cause. It is sufficient if an officer initiating the chain of communication receives information from an official source or eyewitness who, it seems reasonable to believe, is telling the truth. Crawford v. State, 334 So.2d 141 (Fla. 3rd DCA 1976). This so-called "fellow officer" rule has been applied to search warrants, as well as arrests. "Observations of fellow officers of the government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684, 690 (1965). The rule is not limited to officers within the same law enforcement agency. See Carroll v. State, 497 So.2d 253 (Fla. 3d DCA 1985), rev. denied, 511 So.2d 297 (Fla. 1987).
Williams criticizes Scott's statement that, after initially talking with the informant, Lionell walked into the house at 702 Brentwood Street and then exited the house shortly thereafter to meet with the informant. She correctly asserts that no one observed Lionell's exit from the house and that he was awaiting the informant and Tolleson when they returned to a point in front of the house to complete the illegal purchase after circling the block. Williams alleges that the representation in Scott's affidavit that cocaine was being stored in the house was misleading and false and that only a possibility existed that additional contraband existed in the house, a possibility that never became a fair probability. The absence of an observed exit from the house by Lionell seemed to be a keystone reason for the trial court's finding that Scott's affidavit deceived the judge who issued the search warrant and that no one could account for his whereabouts during the time he was out of sight. It is implied that, since Lionell lived next door to Williams' house, he could have exited Williams' house secretly after Tolleson lost sight of him while circling the block and could have obtained the cocaine from his own residence. There was no indication that Lionell took such a course, and the mere possibility that he may have followed that course does not destroy the reasonable probability that he obtained the cocaine from 702 Brentwood. Even if an officer had remained at the front door of 702 Brentwood, Lionell could have sneaked back into the rear of the house after obtaining the cocaine from his home next door and then reappeared at the front door of Williams' house.
In Reyes v. State, 541 So.2d 772 (Fla. 3d DCA 1989), the court stated that, where drugs are sold from premises, the inference may reasonably be drawn that contraband remains on the premises. Id. at 773. In Reyes, an unwitting informant went alone to the door of defendant's residence and was admitted. Two minutes later, and while the informant was out of sight of the officers, he reappeared with cocaine. The court determined that a search warrant had been issued properly although the informant was out of sight of officers for two minutes so that a purchase was assumed rather than witnessed.
Probable cause is a practical, common-sense question. Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543 (1983). It is the probability of criminal activity, and not a prima facie showing of such activity, which is the standard of probable cause. Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The determination of probable cause involves factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Brinegar v. U.S., 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1891 (1949). "As long as the magistrate had a substantial basis for concluding that search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Illinois v. Gates, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. We have reviewed Deputy Scott's affidavit that was relied upon by the judge issuing the search warrant, having before us the additional facts revealed at the hearing on the motion for summary judgment. Those additional facts do not destroy the reasonable finding of probable cause and that the controlled substances were retrieved from Williams' residence to facilitate the sale to the informant.
*1391 The partial summary judgment determining the liability of Polk is reversed, and we remand for further proceedings.
REVERSED and REMANDED.
DANIEL, C.J., and HARRIS, J., concur.