739 So.2d 561 (1999)
STATE of Florida, Petitioner,
v.
William E. PETERSON, Respondent.
No. 92,692.
Supreme Court of Florida.
June 17, 1999.
Rehearing Denied September 13, 1999.
*562 Robert A. Butterworth, Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Edward C. Hill, Jr., Assistant Attorney General, Tallahassee, Florida, for Petitioner.
Nancy A. Daniels, Public Defender, and Kathleen Stover, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida, for Respondent.
HARDING, C.J.
We have for review a district court decision on the following question certified to be of great public importance:
WHETHER AN AFFIANT OFFICER'S ASSERTIONS IN A SEARCH WARRANT AFFIDAVIT TO THE EFFECT THAT A CONFIDENTIAL INFORMANT HAS PROVIDED ACCURATE AND TRUE INFORMATION TO LAW ENFORCEMENT ON AT LEAST TWENTY OCCASIONS IN THE PAST REGARDING ILLEGAL CRIMINAL ACTIVITIES LEADING TO SUCCESSFUL ARRESTS AND CRIMINAL PROPERTY SEIZURES, TOGETHER WITH SUPPRESSION HEARING TESTIMONY FROM THAT OFFICER TO THE EFFECT THAT HE HAD PERSONAL KNOWLEDGE OF THE RELIABILITY OF THE CONFIDENTIAL INFORMANT WHEN HE BOTH SWORE OUT THE SEARCH WARRANT AFFIDAVIT AND WHEN HE HELPED EXECUTE THE SEARCH WARRANT, CAN SUPPORT A FINING THAT AN OFFICER IN THE AFFIANT/EXECUTING OFFICER'S POSITION COULD HAVE RELIED IN GOOD FAITH ON THE RESULTING SEARCH WARRANT AND THAT SUCH RELIANCE WOULD HAVE BEEN OBJECTIVELY REASONABLE FOR PURPOSES OF ESTABLISHING THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE ANNOUNCED IN UNITED STATES V. LEON, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
Peterson v. State, 706 So.2d 936, 940 (Fla. 1st DCA 1998). We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. For the reasons expressed below, we decline to answer the certified question because we find that the affidavit in support of the search warrant in this case was valid on its face.
William Peterson was convicted of various drug offenses following the denial of his motion to suppress the narcotics seized from his residence pursuant to a search warrant. The facts surrounding the search are as follows:
In June 1996, Officer Greg Ne[S]mith of the Escambia County Sheriff's Department submitted an affidavit for a search warrant to an Escambia County judge for the premises known as 3005 West Desoto Street located in Escambia County, Florida. Officer Ne[S]mith alleged in his affidavit that the referenced premises were "occupied by or under the control of white male Jorge McCormick, *563 and or persons unknown to your affiant" and that he believed, based on his qualifications as a narcotics investigator and information given to him by a confidential informant, that marijuana, LSD, drug paraphernalia, and evidence of drug sales would be found at the premises. Officer Ne[S]mith set forth the following assertions in his affidavit regarding the information obtained from the confidential informant:
Your affiant was contacted by a reliable confidential informant, hereafter referred to as RCI. The RCI has provided information to law enforcement on at least twenty occasions regarding illegal criminal activities occurring in Escambia County, Florida that has proven to be accurate and true. The RCI stated that the RCI has observed marijuana on at least 100 occasions and the RCI is familiar with its physical appearance and smell. The RCI is responsible for the arrest of four individuals and the seizure of $400.00 in illegal controlled substances. The RCI stated within the past ten days, the RCI was inside the above described location and observed Jorge McCormick in possession of a large quantity of marijuana. The RCI stated that Jorge McCormick lives at the above described location. The RCI stated that the RCI did observe ¼ to ½ pound of marijuana packaged for distribution. This is consistent with the quantities kept by distributors of marijuana. The RCI stated that the RCI has on several occasions observed Jorge McCormick within the past six months in possession of large quantities of marijuana. The RCI also stated to your affiant that the RCI has observed Jorge McCormick within the past 15 days in possession of a quantity of Acid (Lysergic acid diethylamide, LSD).
Your affiant caused a criminal history inquiry to be conducted on Jorge McCormick. The criminal history inquiry revealed that Jorge McCormick has been arrested for possession with intent to distribute dangerous drugs to wit, Acid in 1989. Jorge McCormick was also arrested for possession with intent to distribute marijuana and LSD in 1991. In 1995 Jorge McCormick was arrested for possession of marijuana.
A subsequent search pursuant to the warrant, executed by Officer Ne[S]mith and other members of the Escambia County Sheriffs Department, resulted in the seizure of assorted drugs and drug paraphernalia.
Appellant challenged the search in a motion to suppress on grounds that the search warrant affidavit submitted by Officer Ne[S]mith had been fatally defective in that it had failed to set forth either facts from which a magistrate could have found that Officer Ne[S]mith had personal knowledge of the confidential informant's reliability or facts from an independent source which corroborated the reliability of the confidential informant's information. Appellant further argued in his motion that these defects in the affidavit precluded application of the good-faith exception to the exclusionary rule since no reasonable law enforcement officer would have in good faith executed such a warrant based on a defective affidavit.
At the suppression hearing, Officer Ne[S]mith testified that the confidential informant referred to in the affidavit had personally provided reliable information about illegal drug activity to him on at least ten occasions in the past and that he had been told by other members of the Escambia County Sheriffs Department that this same confidential informant had also provided them with reliable information about illegal drug activity on at least ten occasions in the past. The trial court orally denied the motion to suppress finding that the affidavit had been legally sufficient to support a finding of probable cause and that, even assuming its legal insufficiency, *564 the good faith exception to the exclusionary rule applied.
Peterson, 706 So.2d at 937-38. On appeal, the district court reversed the convictions, holding that the search warrant was invalid on its face. The district court also held that the "good faith" exception articulated in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was inapplicable to this case.
The "good faith" exception becomes applicable only upon finding that the affidavit for a search warrant was insufficient to establish probable cause. Therefore, we begin our analysis in this case by assessing the validity of Officer NeSmith's affidavit. This Court is bound to follow the opinions of the United States Supreme Court concerning Fourth Amendment search and seizure issues. See Bernie v. State, 524 So.2d 988, 990-91 (Fla.1988). In determining whether probable cause exists to justify a search, the Supreme Court has held that the trial court must make a judgment, based on the "totality of the circumstances," as to whether the information given indicates a reasonable probability that contraband will be found at a particular place and time. See Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). See also McCall v. State, 684 So.2d 260, 262 (Fla. 4th DCA 1996). The Gates Court stated:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.
Gates, 462 U.S. at 238-39, 103 S.Ct. 2317.
Hearsay information provided by a confidential informant can be sufficient to support a search warrant, see State v. Wolff, 310 So.2d 729, 733 (Fla.1975), provided the affidavit satisfies the Gates test. See State v. Butler, 655 So.2d 1123, 1126-30 (Fla.1995). "Veracity" and "basis of knowledge" are among the factors to be considered in assessing the reliability of an informant's information. See Vasquez v. State, 491 So.2d 297, 299 (Fla. 3d DCA 1986). The affidavit in this case adequately demonstrated the informant's basis of knowledge and that issue is not disputed on appeal. The question before this Court is whether the affidavit sufficiently established the informant's veracity. The district court, relying on its own previous decisions, stated that "a search warrant affidavit based on information obtained from a confidential informant must set forth either facts indicating that the affiant has personal knowledge of the confidential informant's reliability or facts from an independent source which corroborate the reliability of the confidential informant." Peterson, 706 So.2d at 938 (citing McNeely v. State, 690 So.2d 1337, 1339 (Fla. 1st DCA 1997); Smith v. State, 637 So.2d 351, 352-353 (Fla. 1st DCA 1994); and St. Angelo v. State, 532 So.2d 1346, 1347 (Fla. 1st DCA 1988)). See also Boyle v. State, 669 So.2d 330, 331-32 (Fla. 4th DCA 1996); Fellows v. State, 612 So.2d 686, 687 (Fla. 2d DCA 1993).
Officer NeSmith stated in his affidavit that the informant "has provided information to law enforcement on at least twenty occasions regarding illegal criminal activities occurring in Escambia County, Florida that has proven to be accurate and true." Generally, this level of previous contact is sufficient to establish veracity. See Butler, 655 So.2d at 1130 (stating that informant's veracity was "unquestioned" where the informant had provided information on at least twenty occasions, with 60% to 70% of the tips resulting in felony arrests). The issue to be resolved in this case is whether the affiant/officer must have personal knowledge of the informant's veracity. We conclude that based on the "fellow officer" rule, the affiant need not have personal knowledge of the informant's veracity if another officer *565 working in connection with the affiant has such knowledge.
The "fellow officer" rule was adopted by the United States Supreme Court in Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). The Whiteley Court stated that "police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause." Id. at 568, 91 S.Ct. 1031. This Court adopted the "fellow officer" rule in the context of an arrest in Johnson v. State, 660 So.2d 648 (Fla. 1995), wherein we explained:
The issue here is whether an officer who himself lacks any personal knowledge to establish probable cause, who has not been directed to effect an arrest, and who does not know a valid warrant has been issued nevertheless can lawfully arrest a suspect. In broad terms, the collective knowledge of police investigating a crime is imputed to each member under a rule of law often called the "fellow officer rule" or "collective knowledge doctrine." The exact contours of the rule are not entirely clear. Florida courts have tended to frame this doctrine in very sweeping terms, e.g., Carroll v. State, 497 So.2d 253 (Fla. 3d DCA 1985), review denied, 511 So.2d 297 (Fla. 1987), though we obviously are bound by any contrary federal law in the Fourth Amendment context. Perez[ v. State, 620 So.2d 1256 (Fla.1993)].

We recognize that some lower federal courts have limited the doctrine to two fairly narrow circumstances. The first is when an arresting officer with no personal knowledge of any facts establishing probable cause nevertheless is directed to make the arrest by other officers who do have probable cause. The other is when the arresting officer possesses personal knowledge that, standing alone, is insufficient to establish probable cause but when shared with the knowledge of other officers collectively meets the requirement. Charles v. Smith, 894 F.2d 718, 724 (5th Cir.), cert. denied, 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990). The record does not support the conclusion that Castro fell within either of these two instances.
Other courts have elaborated on the question in somewhat different factual contexts, typically requiring a direct communications link between officers who possess probable cause and the arresting officer. This often takes the form of a direct order that the arrest be effected, United States v. Woods, 544 F.2d 242 (6th Cir.1976), cert. denied, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977), but also can consist of general communications among officers at least one of whom possesses probable cause. United States v. Edwards, 885 F.2d 377 (7th Cir.1989). We recognize that this last category is to some degree inconsistent with the formulation of the Fifth Circuit in Charles. Nevertheless, there is competent substantial evidence that Castro fell within this particular category, since Redden had been in communication with persons who possessed probable cause and later communicated that information to Castro. We thus believe that the arrest, at a minimum, was supported by probable cause under the fellow-officer rule.
Id. at 657 (emphasis added) (footnotes omitted).
Lower courts in this state have held that the "fellow officer" rule applies to searches as well as arrests. See State v. Evans, 692 So.2d 216, 218 n. 3 (Fla. 4th DCA 1997) ("This so-called fellow officer rule has been applied to search warrants as well as arrests."); Polk v. Williams, 565 So.2d 1387, 1390 (Fla. 5th DCA 1990). In Polk, the district court relied on United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), to support the application of the "fellow officer" rule in the context of a search. In Ventresca, the *566 Supreme Court held that the affidavit in question was sufficient to establish probable cause and stated that "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." Id.
Other jurisdictions in this country have also applied the "fellow officer" rule to cases involving searches. See United States v. Wilson, 894 F.2d 1245, 1254 (11th Cir.1990) ("Moreover, when a group of officers is conducting an operation and there exists at least minimal communication between them, their collective knowledge is determinative of probable cause."); United States v. McCormick, 309 F.2d 367, 372 (7th Cir.1962); Chin Kay v. United States, 311 F.2d 317, 320 (9th Cir.1962); People v. Leahy, 173 Colo. 339, 484 P.2d 778, 781 (1970); State v. Mickelson, 18 Or.App. 647, 526 P.2d 583, 584 (1974); State v. Austin, 641 A.2d 56, 58 (R.I.1994). The "fellow officer" rule has even been applied for the benefit of a defendant. See United States v. Bater, 830 F.Supp. 28, 36 (D.Mass.1993) (holding that search warrant was invalid because one officer knew information in affidavit was false).
In United States v. Taylor, 162 F.3d 12 (1st Cir.1998), a case similar to the present case, the First Circuit Court of Appeals applied the "fellow officer" rule in the context of an investigatory stop of an automobile. In Taylor, a confidential informant telephoned Officer Lee of the Springfield (Massachusetts) Police Department and stated that he observed two men with large amounts of crack cocaine and handguns. The informant described the car the men were driving and stated that the men were delivering the drugs to other dealers. Although the standard procedure within the department was to assign informants to individual officers, the officer (Officer Talbot) to whom the informant in this case was assigned was off duty and therefore Officer Lee processed the call. Although Officer Lee was familiar with the informant, he could not recall whether any information provided to him personally by the informant had led to any arrests. However, Officer Lee was aware that the informant had provided Officer Talbot with information that led to arrests and convictions on at least five previous occasions. Officer Lee made a general radio broadcast of the information to all police units, whereupon Officer Komosa and other officers stopped the vehicle and discovered the drugs and guns. At trial, the federal district court denied the defendant's motion to suppress and found that the informant's tip was sufficient to justify the stop. The district court specifically found that the informant was reliable. The First Circuit Court of Appeals agreed, stating "[t]he informant had provided reliable information to the Springfield Police Department on several occasions in the past." Id. at 18. The court also addressed the "fellow officer" rule:
Taylor argues that the information concerning the informant's reliability known to Officer Lee cannot be imputed to Officer Komosa under the so-called "fellow officer" rule. We reject that contention. Officers Lee and Komosa were "cooperating in an investigation." United States v. Meade, 110 F.3d 190, 193 (1st Cir.1997). Accordingly, Officer Komosa was not required to undertake an independent assessment of the informant's reliability before acting upon the information provided to Officer Lee. Indeed, to require such an independent inquiry by an officer on patrol in the area of the suspected criminal activity would undermine the legitimate investigatory functions of the police and require an officer to "shrug his shoulders and allow a crime to occur or a criminal to escape." Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
Id. at 18 n. 2. See also Willett v. State, 298 Ark. 588, 769 S.W.2d 744, 746 (1989) ("The test for reasonable cause for stopping and searching a vehicle depends upon the collective information of the police officers *567 and not solely on the knowledge of the officer stopping the vehicle."). The First Circuit Court of Appeals apparently was not concerned that Officer Lee did not have "personal knowledge" of the informant's reliability (i.e., that the informant had not provided reliable information to Officer Lee personally). See also Rugendorf v. United States, 376 U.S. 528, 530, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) (concluding that an affidavit containing information provided by confidential informants was sufficient to establish probable cause, where the informants' reliability was established by the fact that the informants had "furnished reliable information to the Federal Bureau of Investigation in the past").
We agree with the reasoning of these courts and find that the "fellow officer" rule applies to searches as well as arrests. In light of the need for efficient law enforcement, this finding is both practical and necessary, because it allows reliable informants to be utilized by more than one officer. See People v. Lopez, 95 A.D.2d 241, 465 N.Y.S.2d 998, 1002-03 (1983) ("To confine the fellow officer rule to directives for arrest in the formal sense would unnecessarily hamper law enforcement officials without providing any meaningful additional safeguards for the rights of individuals and would be inconsistent with the underlying rationale of the rule which recognizes the need for law enforcement officers to seek the assistance of other officers in a variety of situations."). Under the First District's rule requiring personal knowledge, in order to establish veracity within an affidavit, a reliable informant can only give new information to an officer with whom he or she has previously dealt. If Officer A knows that Informant has provided reliable information to Officer B in the past, then Officer A should be able to consider Informant reliable and obtain a warrant if necessary. Under the First District's rule, if the police want to satisfy the veracity requirement, Officer B is the only officer who can submit the affidavit. This rule creates obvious pitfalls (i.e., if Officer B is unavailable, as in Taylor). We find that this technicality is an unreasonable hindrance to the furtherance of police investigations. See Ventresca, 380 U.S. at 109, 85 S.Ct. 741 ("[W]here reason for crediting the source of information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner."). We note that this Court has applied a similar rule of constructive knowledge in other circumstances. See, e.g., Gorham v. State, 597 So.2d 782, 784 (Fla.1992) ("Even though the police did not reveal Johnson's informant status to the state attorney who prosecuted Gorham's case, the state attorney is charged with constructive knowledge and possession of evidence withheld by other state agents, such as law enforcement officers.").
By applying the "fellow officer" rule to the present case, we find that the trial court did not err in finding that Officer NeSmith's affidavit was sufficient on its face. The information contained within the "four corners" of the affidavit established the informant's veracity. See Schmitt v. State, 590 So.2d 404, 409 (Fla. 1991) ("[c]onfining our inquiry to the four corners of the affidavit, as required by law"). The affiant stated that the informant "has provided information to law enforcement on at least twenty occasions regarding illegal criminal activities occurring in Escambia County, Florida that has proven to be accurate and true." The "fellow officer" rule obviates the need for Officer NeSmith to have personal knowledge of the informant's veracity, as the knowledge of the law enforcement officers that the informant previously dealt with is imputed to Officer NeSmith.
However, it is important that Officer NeSmith was aware of the informant's previous dealings with law enforcement officials. Without this knowledge, Officer NeSmith would not have been able to establish *568 the informant's veracity within the affidavit. The unknowing officer cannot rely on the "fellow officer" rule simply because the officer finds out after the fact that the informant had previously provided reliable information to the police.
Accordingly, for the reasons expressed in this opinion, we quash the decision of the district court and remand with directions to affirm Peterson's convictions and sentence.
It is so ordered.
SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.