EHRLICH, MERRILEE, Associate Judge.
Defendant was charged by information with manufacture of marijuana, conspiracy to traffic in marijuana and possession of cocaine, alprazolam, amphetamine, hydro-codone, and oxycodone. Subsequently, defendant filed a motion to suppress challenging the legality of the search warrant for lack of probable cause. The trial court denied the motion. As a result, defendant entered into a plea agreement with the State where defendant entered a plea of nolo contendere to Counts 1, 3, 4, 7, and 8 of the information, while reserving his right to appeal the denial of his dispositive motion to suppress. The State nolle prossed counts 2, 5, and 6. This appeal followed. We agree with the defendant that the trial court erred in denying the motion to suppress and reverse.
At the hearing on the motion to suppress, the defendant agreed that there was no bad faith on the part of the officers in submitting the search warrant application and affidavit. Defendant also did not argue that the affiant omitted any material facts or made any material misrepresentations. Rather, defense counsel argued that the alleged facts therein were insufficient to support a finding of probable cause.
The entire affidavit in support of the application for the search warrant states as follows:
(a)Affiant was a police officer for two (2) years. He completed over 600 hours’ training beyond the basic police academy. He was also a Uniformed Crime Scene Investigator and had participated in multiple serious narcotics investigations and arrests.
(b) Within the past 30 days, a past proven and reliable confidential informant informed affiant that David Devroomen was operating a marijuana grow house from his residence, located at 525 N.W. Biscayne Dr. within the city limits of Port St. Lucie. Such was corroborated through affiant’s investigation. Devroo-men was utilizing a black 1994 Chevrolet pick-up truck (tag # R135K). A record check showed that the truck was registered to defendant.
(c) Defendant resided at 380 N.W. Dearmen St., which is in close proximity to Devroomen’s residence. Devroomen made numerous stops at defendant’s house.
(d) During the course of the investigation it was learned that Devroomen used defendant’s vehicle to further his criminal enterprise in the cultivation of marijuana.
(e) A check of FPL records for defendant’s residence displayed “erratic/abnormal patterns of electrical usage for the neighborhood. Note: The usage was compared to the other homes of the same size and in the immediate area.”
(f) After this initial information was gathered, surveillance of defendant’s residence revealed the following observations:
i. A wood fence around the air conditioning unit on the outside of the home. Per affiant, such fencing is typically used to conceal irregular use of air conditioning used to keep (marijuana) grow rooms cool from the overwhelming heat produced by the grow lights and fans.
ii. A humming noise heard from within the residence. Per affiant, such sound is commonly associated with electrical ballasts used within *221 marijuana grow operations to supply electrical current to related growing hardware.
iii. There were sensor lights outside, at the four corners of the home. Per affiant, such were typically utilized at grow houses for counter surveillance in order to avoid detection.
iv. All windows of the residence, including the glass window in the front door had window treatments that do not allow light to escape. Per affiant, such is a common practice in marijuana grow houses to avoid detection; no one can see in.

Probable Cause

Where the issuance of a search warrant based upon a probable cause affidavit is at issue, the reviewing court is required to give “great deference” to the magistrate’s probable cause determination. State v. Abbey, 28 So.3d 208, 210 (Fla. 4th DCA 2010) (quoting State v. Rabb, 920 So.2d 1175, 1180 (Fla. 4th DCA 2006) (other internal quotation marks omitted)). The “duty of reviewing courts is simply to ensure that the magistrate had a substantial basis for ... concluding that probable cause existed.” Rabb, 920 So.2d at 1180 (internal quotation marks and alterations omitted).
The magistrate’s duty “is simply to make a practical, common-sense decision, whether, given all the circumstances set forth [within the four corners of] the affidavit before him ... there is a fair probability that ... evidence of a crime will be found in a particular place.” Id. at 1180 (quoting DeLaPaz v. State, 453 So.2d 445, 446 (Fla. 4th DCA 1984)); see also Pagan v. State, 830 So.2d 792, 806 (Fla.2002) (to determine whether probable cause exists, the coui’t must make a judgment based on the totality of the circumstances).
We conclude that there was not a substantial basis for concluding that probable cause existed for several reasons. First, the confidential informant’s information was only as to Devroomen and his residence. The confidential informant had no information or involvement with the defendant or his house.
Second, the affiant averred that Devroo-men utilized defendant’s pick-up truck; that affiant’s investigation disclosed that Devroomen used defendant’s pick-up truck to further his criminal enterprise; that Devroomen lives “in close proximity” to defendant’s residence; and that Devroo-men made numerous stops at defendant’s residence. What was missing, however, were the particulars. There are no dates, no amounts of times per week, per day or per month to quantify the “numerous” stops that Devroomen made to defendant’s home. There is no indication that Devroo-men visited defendant’s residence using defendant’s truck. There is no description of the numerous visits that Devroomen made to defendant’s residence that would provide indicia of characteristics of an ongoing marijuana grow house operation there. There is nothing within the four corners of the affidavit in support of the search warrant indicating that the police investigation and surveillance uncovered anything linking defendant to Devroomen’s illegal use of defendant’s truck by way of knowledge, action or otherwise. And, as to the two men living in “close proximity” to one another, they do not live on the same block, so just how close do they live to one another? How long has each lived there? Who moved there first? Was it recently? How the facts and lack thereof are presented to a magistrate are important as well.
Third, per the affiant, FPL records for defendant’s residence displayed “erratic/abnormal patterns of electrical usage for *222 the neighborhood” when compared to other homes of the same size and in the immediate area. Once again, no particulars are provided to explain affiant’s conclusion of “erratic/abnormal patterns.” Were the comparable homes built within the same time frame as the defendant’s home? Were there insulation issues? How many people lived in those homes relative to the defendant’s household? Did appellant have visitors during this time-frame which was “season” in South Florida? Did the defendant’s home have old or new, energy efficient appliances? What was the actual electrical usage at defendant’s home and how much did it differ from his neighbors? Perhaps the most important particular missing is how does defendant’s electrical usage compare to Devroomen’s or other known marijuana grow houses?
Fourth, after the above information was gathered, surveillance of defendant’s house revealed a wood fence around the outside air conditioning unit, which is completely innocent by itself, and there are no facts indicating that the air conditioning unit was oversized or commercial grade. Rather, the unit here was just a regular residential unit, an eyesore that was hidden by a wood fence. What is not mentioned is whether neighboring residences also had fences or foliage around their outside air conditioning units. Further, unless ballasts used in marijuana grow houses have a special identifying humming noise, which the affiant does not aver, it is just as reasonable to believe that the humming noise coming from inside of the home was a common household appliance (dishwasher, washing machine, air conditioner, or otherwise). How long he listened is not provided by affiant. Similarly, the sensor security lights outside, at the four corners of the home, appear to be perfectly innocent, by themselves, as well. The affidavit for the search warrant does not reflect how many other residences in the neighborhood have the same or similar security measures or whether or not this was a high crime area for residential burglaries at that time, but this is a reasonably cautious homeowner’s action and a task that police constantly instruct homeowners to perform to protect themselves and their property against burglars. In addition, the fact that all of the windows, including the window in the front door, had window treatments that kept out light and prying eyes is not cause for suspicion in Florida. It keeps out the heat to keep residents more comfortable and their FPL bills lower and keeps would-be criminals from peeking in and seeing whether they may want to burglarize the home. The fact that it also kept the police’s prying eyes from seeing in through the windows does not make it suspicious.
The particulars delineated herein are suggestions only. They are not a list of requirements. The more particulars provided within the four corners of an affidavit in support of an application for search warrant, the more a mere possibility, warranting more investigation and surveillance, becomes a fair probability in a “close call” case such as this case. The actual facts of this case boil down to this. Defendant loaned Devroomen his truck. Dev-roomen visited defendant often. Devroo-men had a grow house. Devroomen used defendant’s truck to further his criminal enterprise. Was there more than guilt by association and a trained police officer’s gut instinct at that point? A “substantial” basis to conclude that probable cause existed for Devroomen and his home does not automatically carry over to defendant and his home without more.
Most obviously lacking was the fact that affiant got close enough to defendant’s residence to hear the humming noise inside and to try to look through various win *223 dows, but smelled no odor of cannabis emanating from the residence. See, e.g., Rabb, supra. There is nothing in the affidavit about typical marijuana grow house equipment or cannabis or otherwise going in or out of defendant’s home, especially by Devroomen utilizing defendant’s truck. There is nothing in the affidavit indicating that defendant’s residence had the same characteristics as Devroomen’s residence, a proven marijuana grow house, and what those characteristics are. There is nothing in the affidavit indicating trash pulls by affiant at defendant’s residence nor the use of confidential informants or even anonymous tipsters regarding defendant’s residence. Baker v. State, 762 So.2d 977, 978 (Fla. 4th DCA 2000).
The use of defendant’s truck by Devroo-men in the furtherance of a criminal enterprise and the fact that defendant lived nearby certainly gave affiant a good faith basis to take a good look at defendant. However, the equally innocent explanations for all that the police found (and did not find: the odor of cannabis) at defendant’s residence still merely suggested the possibility only, under the totality of the circumstances, without more particulars in the affidavit in support of the search warrant, that there was a nexus between the subject of the search and the residence to be searched.

Good Faith Exception

We also do not agree that the good faith exception applies in this instance. Garcia v. State, 872 So.2d 326, 330 (Fla. 2d DCA 2004), held that, where there is a lack of facts, a real paucity of facts, a very weak case, the law is well established that where “the supporting affidavit fails to establish probable cause to justify a search, Florida courts refuse to apply the good faith exception.” When an affidavit for a search warrant is so lacking in indicia of probable cause “as to render an official’s belief in its existence entirely unreasonable,” the good faith exception is not applicable. Dyess v. State, 988 So.2d 146, 149 (Fla. 1st DCA 2008) (quoting Montgomery v. State, 584 So.2d 65, 68 (Fla. 1st DCA 1991)). The good faith exception does not apply where the affidavit is so lacking in probable cause and fails to establish a nexus between the objects of the search and the residence to be searched. Gonzalez v. State, 38 So.3d 226, 230 (Fla. 2d DCA 2010); Garcia, 872 So.2d at 330.
Although a magistrate’s probable cause determination is entitled to “great deference” when based upon a probable cause affidavit, the court should not defer if there is no substantial basis for concluding that probable cause existed. Rabb, 920 So.2d at 1180-81. As stated in Polk v. Williams, 565 So.2d 1387 (Fla. 5th DCA 1990):
Probable cause is a practical commonsense question. Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543 (1983). It is the probability of criminal activity, and not a prima facie showing of such activity which is the standard of probable cause. Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The determination of probable cause involves factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Brinegar v. U.S., 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1891 (1949). “As long as the magistrate had a substantial basis for concluding that search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.” Illinois v. Gates, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547.
Polk, 565 So.2d at 1391. See also Pagan, 830 So.2d at 806. Here, from the actual facts placed before the magistrate regard *224 ing innocent characteristics of the home, and despite the information regarding trips by a drug grower using the defendant’s truck, there was not a “substantial” basis for concluding that a search of defendant’s home would uncover evidence of wrongdoing sufficient to allow the “good faith” exception to apply.

Reversed and Remanded.

POLEN, J., concur.
WARNER, J., concurs specially with opinion.