SILBERMAN, Judge.
 

 The State charged Bob Fijnje
 
 [1]
 
 and Lisa Chen with trafficking in cannabis and possession of cannabis. In this appeal, the State challenges the trial court’s order granting a motion to suppress in favor of Fijnje and Chen,
 
 [2]
 
 arguing that the trial court incorrectly determined that the anticipatory warrant used to search Fijnje’s apartment was invalid. Citing
 
 United States v. Grubbs,
 
 547 U.S. 90, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006), the trial court found that the warrant was invalid because neither the warrant nor the affidavit filed in support of its issuance identified the triggering condition for its execution. The trial court suppressed all statements and tangible evidence obtained during the search of Fijnje’s apartment. We reverse based upon our conclusion that the trial court misconstrued
 
 Grubbs
 
 in determining that the warrant was invalid. Further, even if the warrant were defective, the good faith exception to the exclusionary rule applied to allow the State to use at trial the evidence seized during the search. Accordingly, we reverse the suppression order and remand for further proceedings.
 

 BACKGROUND
 

 On November 10, 2004, Detective Carla Colebank of the Hillsborough County Sheriffs Office applied for a warrant to search Fijnje’s apartment. In support, she filed her affidavit stating that she had “reason to believe” that marijuana “is now
 
 *1260
 
 being kept” at Fijnje’s apartment. She described a series of contacts involving a confidential informant (Cl) and Fijnje that occurred between November 4 and 10, 2004. During each contact, Detective Co-lebank kept the Cl under visual surveillance and monitored his conversations with Fijnje through an electronic listening device.
 

 Detective Colebank stated that on November 4, 2004, she met with the Cl, searched him and his vehicle, equipped him with an electronically monitored listening device, and observed him enter Fijnje’s apartment. There, the Cl negotiated the purchase of thirty pounds of marijuana from Fijnje for approximately $3600 per pound. Fijnje stated that his supplier, “known only to affiant as Lisa from the Orlando area with two cell phones,”
 
 [3]
 
 was getting a shipment that day. However, he was uncertain when the transaction could take place. Fijnje was unsuccessful in trying to contact Lisa at that time, and the Cl left Fijnje’s apartment.
 

 On November 9, 2004, the Cl returned to Fijnje’s apartment, again while wearing an electronic monitoring device. Fijnje advised the Cl that Lisa would be ready the next day, November 10, and that Fijnje told her he wanted the marijuana on November 10. Fijnje also told the Cl that he would be working on November 10 and that delivery of the marijuana would possibly take place on November 11. He and the Cl agreed to make contact by phone to finalize plans for the transaction.
 

 Detective Colebank and the Cl made a controlled phone call to Fijnje on November 10. Fijnje stated that he had been able to get a lower price for the marijuana, $3400 per pound, and that Lisa would call him when she left to drive to his residence. The Cl told Fijnje to add a few more pounds of marijuana due to the lower price and because Lisa had not yet left her location. Fijnje advised that the marijuana would arrive that evening between 10 p.m. and 10:30 p.m.
 

 Detective Colebank and the Cl conducted a second controlled phone call on November 10 in which Fijnje stated that Lisa would be arriving at his apartment in approximately ten minutes.
 
 [4]
 
 Fijnje said that Lisa would bring the marijuana inside for inspection. She would then leave and return approximately thirty minutes later to collect the money.
 

 Judge Robert A. Foster issued the search warrant on November 10, 2004, concluding that the facts alleged in the affidavit (which were incorporated into the warrant) established probable cause for issuance of the warrant. Detective Cole-bank executed the warrant by searching the apartment on November 11, 2004, at approximately 12:30 a.m., and Fijnje and Chen were arrested at 12:55 a.m.
 
 [5]
 
 The State charged them pursuant to section 893.135(1)(a)(l), Florida Statutes (2004), with trafficking in cannabis (more than twenty-five pounds but less than 2000 pounds). The State also charged Chen pursuant to section 893.13(6)(b) with possession of cannabis.
 

 THE MOTION TO SUPPRESS AND THE TRIAL COURT’S RULING
 

 Fijnje filed his motion to suppress, arguing that the warrant was an improper anti
 
 *1261
 
 cipatory warrant which was not based on probable cause. In his motion and at the suppression hearing, he asserted that the affidavit incorrectly stated that marijuana was “now being kept” at the apartment. Instead, the facts alleged in the affidavit demonstrated that the marijuana was not present when law enforcement applied for the warrant. He contended that pursuant to section 933.18(5), Florida Statutes (2004), the search of a residence may not occur unless probable cause supports that there exists a
 
 current
 
 violation of narcotics laws on the premises. Fijnje further argued that the warrant was invalid because it failed to state a triggering condition that would allow law enforcement to serve the warrant. In support of this argument, he relied upon the United States Supreme Court’s decision in
 
 United States v. Grubbs,
 
 547 U.S. 90, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006).
 

 In its order, the trial court found that law enforcement conducted the search after the Cl entered the apartment, observed the marijuana, and notified law enforcement. However, the court granted the motion to suppress based upon its finding that neither the warrant nor the supporting affidavit identified the triggering condition for the warrant’s execution. The court stated that while law enforcement acted reasonably in waiting until the Cl observed the marijuana in the apartment, “[a] reasonable reading of the affidavit gave law enforcement the right to execute the warrant based on the expectation that the drugs were on their way.”
 

 The trial court quoted the following language from
 
 Grubbs:
 

 [F]or a conditioned anticipatory warrant to comply with the Fourth Amendment’s requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that
 
 if the
 
 triggering condition occurs “there is a fair probability that contraband or evidence of a crime will be found in a particular place,” but also that there is probable cause to believe the triggering condition
 
 will occur.
 
 The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination.
 

 547 U.S. at 96-97, 126 S.Ct. 1494 (citations omitted). The trial court observed that in
 
 Grubbs,
 
 the triggering condition, receipt of a videotape, was mentioned in the affidavit with a caveat that the warrant would not be executed until that condition occurred. The trial court reasoned that because the affidavit and warrant in this case did not include a triggering condition, law enforcement was left “with total discretion when they would execute the warrant.” Although law enforcement waited until the Cl observed the marijuana in the residence before executing the warrant, this condition was not listed in the warrant or the affidavit. The trial court concluded that the lack of a triggering condition in the warrant rendered it defective even though the facts contained in the affidavit showed “probable cause without a triggering condition.”
 

 The State argues on appeal that the trial court misapplied
 
 Grubbs
 
 in that
 
 Grubbs
 
 does not require a triggering condition to be stated in the affidavit or warrant and the warrant’s failure to explicitly set forth a triggering condition did not render it fatally defective. Alternatively, the State argues that the trial court should have denied the motion under the good faith exception to the exclusionary rule.
 

 ANALYSIS
 

 “On a motion to suppress the fruits of a search in accordance with a warrant, a trial court examines whether the issuing magistrate had a substantial
 
 *1262
 
 basis for concluding that probable cause existed, and this determination is made by-examining the affidavit in its entirety.”
 
 State v. Vanderhors,
 
 927 So.2d 1011, 1013 (Fla. 2d DCA 2006). A trial court should not disturb the magistrate’s determination of probable cause “absent a clear demonstration of an abuse of discretion.”
 
 Id.
 
 This court reviews the trial court’s determination of the legal issue of probable cause on a motion to suppress de novo.
 
 Id.
 
 (citing
 
 Pagan v. State,
 
 830 So.2d 792, 806 (Fla.2002)). Further, Florida courts “are bound to follow the interpretations of the United States Supreme Court with relation to the fourth amendment, and provide no greater protection than those interpretations.” Bern
 
 ie v. State,
 
 524 So.2d 988, 990-91 (Fla.1988).
 

 Probable Cause
 

 “The Fourth Amendment to the United States Constitution recognizes the right of the people to be protected from the government’s unreasonable searches and seizures and mandates that no search warrant shall issue ‘but upon probable cause, supported by oath or affirmation.’ ”
 
 Burnett v. State,
 
 848 So.2d 1170, 1173 (Fla. 2d DCA 2003) (quoting U.S. Const, amend. IV). In addition, “[t]he Constitution of the State of Florida similarly protects against unreasonable searches and seizures by the government: ‘No warrant shall be issued except upon probable cause, supported by affidavit.’ ”
 
 Id.
 
 (quoting Art. I, § 12, Fla. Const.). Thus, in order to determine the validity of the anticipatory warrant in this case, it is necessary to understand the role of probable cause in the issuance of a warrant.
 

 In
 
 Illinois v. Gates,
 
 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court adopted the totality-of-the-circumstances analysis as the proper test for determining the existence of probable cause to support the issuance of a search warrant. The Court rejected the idea that technical or rigid rules may be applied to determine the existence of probable cause, noting that “[i]n dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.”
 
 Id.
 
 at 231, 103 S.Ct. 2317 (quoting
 
 Brinegar v. United States,
 
 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). The Court further explained that “probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.”
 
 Id.
 
 at 232, 103 S.Ct. 2317.
 

 With respect to the determination of probable cause, the Court defined the roles of the issuing magistrate and reviewing court as follows:
 

 The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the “veracity” and “basis of knowledge” of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a “substantial basis for ... concluding]” that probable cause existed.
 

 Id.
 
 at 238-39, 103 S.Ct. 2317 (quoting
 
 Jones v. United States,
 
 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960),
 
 overruled on other grounds by United States v. Salvucci,
 
 448 U.S. 83, 84-85, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). Accordingly, “[a]n affidavit must provide the magistrate with a substantial basis for determining
 
 *1263
 
 the existence of probable cause.”
 
 Id.
 
 at 239, 103 S.Ct. 2317. In other words, “[s]uffleient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.”
 
 Id.
 

 Recognizing that Florida courts are bound on search and seizure issues to follow the opinions of the United States Supreme Court, the Florida Supreme Court has adopted the totality-of-the-circumstances analysis for determining the existence of probable cause.
 
 State v. Peterson,
 
 739 So.2d 561, 564 (Fla.1999) (citing
 
 Gates); State v. Butler,
 
 655 So.2d 1123, 1125 (Fla.1995) (citing Gates). The court has also recognized that “[t]he existence of probable cause is not susceptible to formulaic determination” and that the determination is based upon probability and not a prima facie showing of criminal activity.
 
 Doorbal v. State,
 
 837 So.2d 940, 952-53 (Fla.2003). The court stated that “[a] judge considering a request for a search warrant must consider the totality of the circumstances included within the four corners of the affidavits presented to him or her.”
 
 Id.
 
 at 953. With these principles in mind, we turn to the establishment of probable cause in support of the issuance of an anticipatory warrant.
 

 Anticipatory Warrants and the Decision in
 
 Grubbs
 

 “An anticipatory warrant is ‘a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.’ ”
 
 Grubbs,
 
 547 U.S. at 94, 126 S.Ct. 1494 (quoting 2 Wayne R. LaFave et al.,
 
 Search & Seizure
 
 § 3.7(c), at 398 (4th ed. 2004)). Generally, anticipatory warrants subject their execution to a triggering condition, that is, “some condition precedent other than the mere passage of time.”
 
 Id.
 
 In those cases,
 

 [i]f the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location; by definition, the triggering condition which establishes probable cause has not yet been satisfied when the warrant is issued.
 

 Id.
 
 Although the affidavit used to obtain the warrant in
 
 Grubbs
 
 specified that execution of the warrant would not occur until the contraband was received into Grubbs’ residence, Grubbs argued that the warrant was invalid because it did not list the triggering condition. He also argued that “anticipatory warrants contravene the Fourth Amendment’s provision that ‘no Warrants shall issue, but upon probable cause.’ ”
 
 Id.
 
 at 94-95,126 S.Ct. 1494.
 

 In determining that the warrant was valid, the Supreme Court first concluded that anticipatory warrants are not categorically unconstitutional.
 
 [6]
 
 It reiterated that “[pjrobable cause exists when ‘there is a fair probability that contraband or evidence of a crime will be found in a particular place.’ ”
 
 Id.
 
 at 95, 126 S.Ct. 1494 (quoting
 
 Gates,
 
 462 U.S. at 238, 103 S.Ct. 2317). The Court added that “[bjecause the probable-cause requirement looks to whether evidence will be found
 
 when the search is conducted,
 
 all warrants are, in a sense ‘anticipatory.’ ”
 
 Id.
 
 The Court explained that when the police seek authorization to search a house for an item they believe is presently located there, the magistrate’s determination that probable cause exists
 
 *1264
 
 for the search is based upon a prediction that the item will still be there when police execute the warrant. “Thus, when an anticipatory warrant is issued, ‘the fact that the contraband is not presently located at the place described in the warrant is immaterial,
 
 so long as there is probable cause to believe that it will be there when the search warrant is executed,.’” Id.
 
 at 96, 126 S.Ct. 1494 (emphasis added) (quoting
 
 United States v. Garcia,
 
 882 F.2d 699, 702 (2d Cir.1989)).
 

 The Supreme Court concluded that anticipatory warrants are no different in principle from ordinary warrants.
 

 They require the magistrate to determine (1) that it is
 
 now probable
 
 that (2) contraband, evidence of a crime, or a fugitive
 
 will be
 
 on the described premises (3) when the warrant is executed. It should be noted, however, that where the anticipatory warrant places a condition (other than the mere passage of time) upon its execution, the first of these determinations goes not merely to what will probably be found
 
 if
 
 the condition is met.... Rather, the probability determination for a conditioned anticipatory warrant looks also to the likelihood that the condition will occur, and thus that a proper object of seizure will be on the described premises.
 
 In other words, for a conditioned anticipatory warrant to comply with the Fourth Amendment’s requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that if the triggering condition occurs “there is a fair probability that contraband or evidence of a crime will be found in a particular place, ” but also that there is probable cause to believe the triggering condition will occur. The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination.
 

 Id.
 
 at 96-97, 126 S.Ct. 1494 (underlined emphasis added) (citations omitted).
 

 The Court then found that the occurrence of the triggering condition, the successful delivery of a videotape to Grubbs’ residence, would establish probable cause for the search and that the affidavit established probable cause that this condition would be satisfied. While Grubbs could have refused delivery of the tape, that was unlikely.
 
 Id.
 
 at 97, 126 S.Ct. 1494. The Court rejected Grubbs’ argument that the warrant itself must explicitly set forth the triggering condition, noting that the Fourth Amendment does not impose a general particularity requirement.
 
 Id.
 
 at 98, 126 S.Ct. 1494. Instead, the Fourth Amendment requires only that the place to be searched and the persons or things to be seized must be particularly described in the warrant.
 
 Id.
 
 The Court concluded by stating that “[bjecause the Fourth Amendment does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself, the Court of Appeals erred in invalidating the warrant at issue here.”
 
 Id.
 
 at 99, 126 S.Ct. 1494.
 

 Application of
 
 Grubbs
 
 to this Case
 

 We agree with the State that the trial court misconstrued
 
 Grubbs
 
 and strayed from the totality-of-the-circumstances analysis applicable to the issuing judge’s determination of probable cause.
 
 Grubbs
 
 determined that an anticipatory warrant need only identify the place to be searched and the person or things to be seized. The supporting affidavit must provide the issuing judge or magistrate with sufficient information to evaluate the two aspects of probable cause inherent in anticipatory warrants: (1) that if the triggering condition occurs there exists a fair probability that the contraband will be found at the place to be searched and (2)
 
 *1265
 
 that there is probable cause to believe the triggering condition will occur. We conclude that the affidavit in this case provided sufficient information to the judge who issued the warrant to enable him to determine the existence of probable cause.
 

 The affidavit detailed a series of events setting up a controlled buy of a large quantity of marijuana at Fijnje’s apartment, including details of the negotiations with respect to price, quantity, and the delivery of marijuana at the apartment in exchange for payment. There were several discussions as to the timing of the transaction. During the first November 10, 2004, controlled phone call, the affiant learned that Fijnje’s supplier would be delivering the marijuana to Fijnje’s apartment that evening between 10 p.m. and 10:30 p.m. A subsequent controlled phone call revealed that the supplier would be arriving at the apartment with the marijuana in ten minutes. Accordingly, based on the circumstances detailed in the affidavit, it is evident that delivery of the marijuana was the triggering condition.
 

 In addition, the facts contained in the affidavit established probable cause to believe that the delivery would occur and that when the police searched Fijnje’s apartment the marijuana would be found. The affidavit described the scheduled transaction for a large quantity of marijuana on November 10, with arrival of the marijuana being imminent. Under the circumstances, it was reasonable to conclude the marijuana was on a sure course to Fijnje’s apartment and it was unlikely that he would refuse delivery of the contraband. Further, the time frame for the arrival of the contraband (ten minutes) established a fair probability that the marijuana would be present when the warrant was executed. Thus, the affidavit provided probable cause for issuance of the warrant.
 

 Affidavits in support of search warrants must be read in a common-sense manner. In
 
 United States v. Kamen,
 
 Case No. 04-10384-PBS, 2006 WL 1697176 (D.Mass. June 20, 2006) (not reported in Federal Supplement 2d), the defendant challenged the validity of a warrant issued in anticipation of delivery of pornographic videotapes of minors to the defendant’s home. The defendant argued that the warrant was invalid because “neither the search warrant nor the application and affidavit contained] any reference to an explicit triggering condition that must occur before the warrant [could] be executed.”
 
 Id.
 
 at *3. The affidavit described the investigation in which postal inspectors had mailed a solicitation to Kamen, inviting him to become a customer of a video company and listing different areas of interest. Kamen responded by requesting more information regarding videotapes with “Preteen-Boys” and “Young Teen-Boys.”
 
 Id.
 
 at *2. The postal inspector mailed to Kamen an order form with a list of videos, and Kamen ordered three videos. The affiant stated that based upon the foregoing, he had “probable cause to believe that there is,
 
 and after delivery of the above described videotapes mil be,
 
 evidence of violations of Title 18, United States Code, Section 2252(a)(2) and (a)(4)(B) (receipt and possession of child pornography) located at” Kamen’s residence.
 
 Id.
 

 The district court stated that the warrant did not contain an explicit triggering condition and that the warrant misstated “that the magistrate judge found probable cause to believe that the evidence is ‘now concealed’ at the residence.”
 
 Id.
 
 Nevertheless, the court found that the warrant application met the two-part test set forth in
 
 Grubbs.
 
 It noted that “[pjrobable cause existed for an anticipatory warrant due to the presence of a valid triggering condi
 
 *1266
 
 tion, completed before the search occurred, and a sure course of the package to delivery.”
 
 Id.
 
 at *4. The court reasoned that the “affidavit must be read ‘in a practical, common-sense fashion and accord[ed] considerable deference to reasonable inferences the [issuing judicial officer] may have drawn from the attested facts.’ ”
 
 Id.
 
 (alterations in original) (quoting
 
 United States v. Beckett,
 
 321 F.3d 26, 31 (1st Cir.2003)). The court concluded that “[u]nder a common-sense reading of the affidavit, the triggering condition for a search for the videotapes and mailing bag is plain and explicit.”
 
 Id.
 

 This court has applied the principle that affidavits should be read in a commonsense manner. In
 
 State v. Lasswell,
 
 385 So.2d 668, 670-71 (Fla. 2d DCA 1980), this court quoted
 
 United State v. Ventresca,
 
 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), as follows:
 

 [T]he Fourth Amendment’s commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court’s cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
 

 See also State v. Heape,
 
 369 So.2d 386, 388 (Fla. 2d DCA 1979) (quoting the same passage from Ventresca). A fair reading of the affidavit in this case supports the conclusion that delivery of the marijuana to Fijnje’s residence was the triggering condition for the warrant and provided the issuing judge with sufficient information to make the requisite probable cause determinations. Accordingly, the trial court erred in determining that the subject warrant was invalid under
 
 Gbrubbs.
 

 On appeal, Fijnje raises several additional arguments with respect to the sufficiency of the affidavit. He argues that the affidavit failed to indicate the times that the two controlled phone calls occurred on November 10 and thus omitted crucial information relevant to the issuing judge’s probable cause determination. He points out that the first call indicated the marijuana would arrive between 10 p.m. and 10:30 p.m. and that the second call stated the marijuana would arrive in ten minutes. He argues that the second call, which occurred at 10:46 p.m., reveals that the timing of the delivery was off by at least half an hour. Thus, he asserts that the reliability of the supplier and the certainty of the delivery were critically affected by this information and that the issuing judge should have been made aware of this fact.
 

 We disagree that the omission of the exact time of the calls is significant under the facts of this case. The affidavit reflects that the supplier was located in Orlando and Fijnje’s residence was located in Tampa. The first controlled call estimated the supplier’s arrival time with the marijuana for later that evening and revealed a price reduction. The Cl requested that Fijnje ask the supplier to increase the amount of marijuana to be delivered by “a few more pounds” because of the reported drop in price and because the supplier had not yet left her location. During the second controlled call, Fijnje advised the Cl that the supplier was merely ten minutes away. Contrary to Fijnje’s argument, the second call actually increased the probabil
 
 *1267
 
 ity that the marijuana was on a sure course of delivery. We cannot agree that the failure of the affidavit to specify the time of the two calls renders the warrant invalid or would have caused the issuing judge not to issue the warrant.
 

 Fijnje also argues that the affiant did not know the supplier and thus, “sitting outside Mr. Fijnje’s home waiting for the supplier to arrive was not possible.” However, the affiant was aware that the supplier was a woman who would be arriving at Fijnje’s apartment with more than thirty pounds of marijuana in ten minutes. The imminent arrival of a woman delivering a large quantity of marijuana during the time that the police applied for the warrant made it unlikely that the police would execute the warrant before the marijuana was present at the apartment.
 

 Fijnje further argues that the warrant was not executed until the Cl had gone to Fijnje’s apartment at 12:32 a.m. on November 11, 2004, saw the marijuana, left the apartment, and notified law enforcement. He points out that this information about the manner of the warrant’s execution could have been included in the affidavit. Although we agree that, from the issuing judge’s perspective, such an indication would have increased the probability that the marijuana would be present in Fijnje’s apartment when the warrant was executed, the relevant inquiry is whether the facts alleged in the affidavit established a fair probability that the marijuana would be delivered to Fijnje’s apartment and would be present when the police executed the affidavit. As discussed above, particularly with the imminent arrival of the marijuana as set forth in the affidavit, the issuing judge correctly concluded that there was probable cause to issue the warrant.
 

 The Good Faith Exception to the Exclusionary Rule
 

 Even if we were persuaded by Fijnje’s argument regarding the triggering condition, we would then have to consider the applicability of the good faith exception to the exclusionary rule as set forth in
 
 United States v. Leon,
 
 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In
 
 Leon,
 
 the Supreme Court observed that the Fourth Amendment does not expressly preclude the use of evidence obtained in violation of its commands. Rather, the exclusionary rule developed as a judicially created remedy designed to safeguard the Fourth Amendment’s protections by its deterrent effect on law enforcement violating those protections.
 
 Id.
 
 at 906, 104 S.Ct. 3405. Whether the exclusion of evidence obtained in violation of the Fourth Amendment is appropriate in a particular case is a separate and distinct issue from the initial determination of whether a defendant’s Fourth Amendment rights were violated.
 
 Id.
 

 Leon
 
 recognized that the exclusionary rule should not always apply when a magistrate-issued warrant is later determined to be invalid. The exclusionary rule should not apply when a police officer’s conduct in executing such a warrant was objectively reasonable. Application of the rule in that circumstance would not serve as a logical deterrent to Fourth Amendment violations.
 
 Id.
 
 at 918-21, 104 S.Ct. 3405. The Court explained as follows:
 

 It is the magistrate’s responsibility to determine whether the officer’s allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In an ordinary case, an officer cannot be expected to question the magistrate’s probable-cause determination or his judgment that the form of the warrant is technically sufficient.
 

 
 *1268
 
 “[O]nee the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.”
 

 Id.
 
 at 921, 104 S.Ct. 3405 (quoting
 
 Stone v. Powell,
 
 428 U.S. 465, 498, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring)).
 

 The Supreme Court recognized several circumstances in which the good faith exception would not apply. These include when (1) the issuing magistrate or judge “was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth”; (2) the issuing magistrate or judge wholly abandoned the role of a neutral and detached judicial officer when presented with an application for a warrant; (3) the warrant is based on an affidavit that lacks the indicia of probable cause, rendering belief in its existence completely unreasonable; and (4) the warrant is “so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized' — that the executing officers cannot reasonably presume it to be valid.” 468 U.S. at 923, 104 S.Ct. 3405.
 

 In
 
 Pilieci v. State,
 
 991 So.2d 883, 897 (Fla. 2d DCA 2008), this court discussed
 
 Leon
 
 and noted that “[although
 
 Leon’s
 
 ruling is considered an ‘exception’ to the exclusionary rule, the Court held that this exception would in fact act as a general rule in cases involving the issuance of a search warrant.”
 
 Pilieci
 
 further analyzed
 
 Leon
 
 as follows:
 

 Effectively, the Court’s opinion requires a court to admit evidence seized pursuant to an invalid search warrant when a police officer has acted in an objectively reasonable manner, in objective good faith, and as a reasonably well-trained officer would act in seeking the warrant from a detached and neutral magistrate and thus has reasonably relied upon the warrant in executing a search within the warrant’s terms and scope. Conversely, suppression is required if the officer has acted dishonestly, recklessly, or under circumstances in which an objectively reasonable officer would have known the affidavit or the existing circumstances were insufficient to establish probable cause for the search.
 

 Id.
 
 at 896.
 

 Here, even if the warrant were invalid for failing to explicitly set forth a triggering condition, Detective Colebank’s execution of the warrant was objectively reasonable and in objective good faith. The record does not reflect circumstances that would preclude application of the good faith exception based on statements contained in Detective Colebank’s affidavit, omissions from her affidavit, the issuing judge’s conduct, or the warrant itself.
 

 Fijnje has not established that the issuing judge was misled by information in the affidavit that Detective Colebank knew or should have known to be false. Fijnje argues that she improperly averred that the marijuana was “now present” in Fijnje’s apartment when, in fact, it was not. However, the factual allegations in the affidavit reflect that the marijuana was to arrive in ten minutes following the second controlled phone call. The anticipatory nature of the affidavit was clear. Further, as discussed above, the omission of the exact times of the two controlled phone calls did not mislead the issuing judge in determining the reliability of the supplier or that the marijuana was on a sure course to Fijnje’s apartment. There is also nothing in the record suggesting that the issuing judge abandoned his role as a neutral and detached judicial officer.
 

 We have previously addressed the adequacy of Detective Colebank’s affidavit and see no basis to conclude that it lacked the necessary indicia of probable cause. Finally, we cannot agree with Fijnje’s argu
 
 *1269
 
 ment that the warrant was so facially deficient that Detective Colebank could not have reasonably presumed it to be valid. Fijnje reiterates that the warrant lacked an explicit triggering condition. But under
 
 Grubbs
 
 an anticipatory warrant is not required to state the triggering condition. Moreover, based upon the allegations in Detective Colebank’s affidavit, which were incorporated into the warrant, it is obvious that the triggering condition was the imminent delivery of the marijuana to Fijnje’s apartment.
 

 Accordingly, even if the warrant were deficient for lack of an explicit triggering condition, the good faith exception to the exclusionary rule would permit the State to use the evidence obtained during the search of Fijnje’s apartment.
 

 Section 933.18, Florida Statutes
 

 On appeal, the State briefly addressed the argument that Fijnje made in the trial court relating to section 933.18, Florida Statutes (2004). The trial court’s order did not address the applicability of the statute, and Fijnje does not argue on appeal that the statute provides an alternative basis to affirm the order granting suppression. However, section 933.18 does not alter our conclusion that the trial court erred in granting Fijnje’s motion to suppress. Section 933.18 states in pertinent part as follows:
 

 No search warrant shall issue under this chapter or under any other law of this state to search any private dwelling occupied as such unless:
 

 [[Image here]]
 

 (5) The law relating to narcotics or drug abuse is being violated therein;
 

 [[Image here]]
 

 No warrant shall be issued for the search of any private dwelling under any of the conditions hereinabove mentioned except on sworn proof by affidavit of some creditable witness that he or she has reason to believe that one of said conditions exists, which affidavit shall set forth the facts on which such reason for belief is based.
 

 In
 
 Bernie v. State,
 
 524 So.2d 988, 991 (Fla.1988), the supreme court recognized that “warrants are not
 
 constitutionally
 
 invalid for lack of a present violation of law at the premises where the contraband will be delivered in the future,” and it then discussed the impact of section 933.18. There, an envelope addressed to Vickie Bernie broke open during transit, revealing a suspicious substance. Law enforcement was notified and determined that the substance was cocaine. On the same day, Bruce Bernie had gone to the freight company’s office to inquire as to the whereabouts of the package. He was told it would be delivered the following day. In the meantime, based on an affidavit setting out these facts, police obtained a search warrant for the Bernies’ residence in connection with the prospective controlled delivery of the cocaine. The Bernies moved to suppress based on section 933.18, arguing that the evidence was the result of an unreasonable search and seizure.
 

 The supreme court considered the language in section 933.18 that no warrant shall issue unless “[t]he law relating to narcotics or drug abuse
 
 is being violated
 
 therein.”
 
 Id.
 
 at 992. The court first determined that the Bernies had no expectation of privacy in the package as the contraband had already been discovered by a legal search. It then concluded that a reasonable construction of the statutory provision
 

 allows a warrant to be issued when the evidence and supporting affidavit show that the drugs have already been discovered through a legal search and seizure and are presently in the process of being transported to the designated residence
 
 *1270
 
 which is being used as the drug drop. It is our view that this is not the type of
 
 in futuro
 
 allegation for a warrant that the legislature intended to prohibit by this statute.
 

 Id.
 

 In
 
 Pazos v. State,
 
 654 So.2d 1000 (Fla. 4th DCA 1995), the Fourth District determined that a search warrant was invalid based on section 933.18(5). There, a deputy sheriff executed an affidavit in support of a warrant application. The affidavit indicated that an informant had unsuccessfully attempted a controlled buy of cocaine at a residence on June 17, 1993. An individual who resided there told the informant that he was out of cocaine but would have more the next day. The informant had purchased cocaine from the individual at that residence in the past. The affidavit recited that the deputy “believes that on 061893 there
 
 will be
 
 cocaine in the residence” and that he would meet with the informant and attempt another controlled buy.
 
 Id.
 
 at 1000. Further, if the buy took place and the informant told the deputy that there was more cocaine in the residence, the deputy would serve the warrant.
 
 Id.
 
 at 1000-01.
 

 The Fourth District concluded that the affidavit did not satisfy section 933.18(5). The court noted that “the ‘anticipatory’ nature of the affidavit could easily have been eliminated by putting the officer’s belief in the present tense given” the seller’s assurance to the informant that he was out of drugs but would have more on the following day and given that the affidavit was not executed “until well into the afternoon of June 18.”
 
 Id.
 
 at 1001. The court added that if the affidavit used the words “is presently” instead of “will be,” it likely would have passed muster.
 
 Id.
 
 at 1001 n. 1. However, the court concluded that the good faith exception to the exclusionary rule applied, stating as follows:
 

 The reliability of the informant was demonstrated; there was a controlled buy as well as prior drug dealings between the informant and the occupant of the dwelling; the officers had the informant in sight constantly except while he was inside the dwelling; there was a firm connection between the contraband and the premises; and there were no false statements or representations in the affidavit.
 

 Id.
 
 at 1001. The court determined that the officer’s reliance on the magistrate’s determination of probable cause was objectively reasonable. Further, the officer had taken the proposed affidavit to an assistant state attorney for approval before taking it to the magistrate. The officer had also indicated that he would not execute the warrant unless and until he had successfully conducted the controlled buy and was assured that additional cocaine was in the premises. The officer observed these conditions in executing the warrant.
 
 Id.
 

 Here, consistent with what the court suggested in
 
 Pazos,
 
 Detective Colebank’s affidavit states a present tense belief that marijuana “is now being kept on said premises” and that the marijuana “is being kept and used in violation of’ Florida law prohibiting possession of controlled substances. At the hearing on the motion to suppress, Detective Colebank acknowledged that the warrant was an anticipatory warrant, but her testimony reflects that she made the statement based on all of the circumstances, which led her to believe the marijuana would actually be present at the time of execution of the warrant.
 

 Although the situation here differs from that in
 
 Bemie
 
 because there had not been a prior legal search before the warrant was obtained, Detective Colebank’s affidavit detailed the negotiations for the purchase of marijuana, identified the supplier and Fijnje, and set forth facts that demon
 
 *1271
 
 strated a fair probability that the marijuana would be delivered and found at Fijnje’s apartment. The affidavit was sufficient for the issuing judge to determine that a warrant should issue based on probable cause to believe that Florida’s drug laws were being violated at Fijnje’s apartment. Further, the information contained in Detective Colebank’s affidavit demonstrated her reason to believe that the law “is being violated” at Fijnje’s apartment, as required by section 933.18. Notably, while the trial court was concerned about the absence of an explicit triggering condition in the warrant or affidavit, it agreed that the facts contained in the affidavit showed probable cause. Under these circumstances, the requirements of section 933.18(5) were satisfied.
 

 CONCLUSION
 

 For the foregoing reasons, we conclude that the trial court erred in suppressing the evidence discovered during execution of the warrant to search Fijnje’s apartment. Therefore, we reverse the order granting Fijnje’s motion to suppress and remand for further proceedings.
 

 Reversed and remanded.
 

 FULMER and WALLACE, JJ., Concur.
 

 [1]
 

 . Pronounced "Fain-ya.”
 

 [2]
 

 . Appellee Lisa Chen joined in Fijnje’s motion to suppress, and the State stipulated to Chen’s standing to challenge the subject search and seizure. Chen has not participated in this appeal.
 

 [3]
 

 . Detective Colebank listed the two cell phone numbers for Lisa in the affidavit.
 

 [4]
 

 . Detective Colebank testified at the suppression hearing that the second call was made at 10:46 p.m.
 

 [5]
 

 .In his motion to suppress, Fijnje stated that the warrant was executed after the Cl arrived at the apartment, observed the marijuana, and notified law enforcement of his observations.
 

 [6]
 

 . The Florida Supreme Court also recognized in
 
 Bernie v. State,
 
 524 So.2d 988, 991 (Fla. 1988), that nothing in the Florida or the United States Constitutions prohibits issuance of an anticipatory warrant.